Q. F. WALKER v. CHARLES ROGAN, COMMISSIONER OF THE GENERAL LAND OFFICE.

No. 844. Decided January 22, 1900.

**1. Minors—Statute—Relief from Disability.**

A statute requiring or permitting a minor to enter into an obligation, removes, to that extent, his disability; but the intention to take away his incompetency must affirmatively appear in the statute, and is not to be deduced from the mere use of general words, such as "any person." (P. 253.)

**2. Same—Sale of School Land—Minors.**

The authority to buy school land from the State on complying with the terms of the law, given to "any person desiring to purchase" by section 6 of Act of July 8,

1879 (April 6, 1881)), did not authorize purchase by a minor, who could not lawfully execute the required obligation. (Pp. 252-255.)

**3. Same.**

The requirement that all who purchase should execute obligations, excludes from those who may purchase persons who are not legally capable of complying with such condition. (P. 253.)

**4.   Contract—State—Officers.**

The State could only become a party to a contract for sale of school land by compliance with the law by a purchaser; the acts of its officers in that connection are not the acts of the State unless they are such as the statute authorizes. (Pp. 254, 255.)

ORIGINAL APPLICATION, before the Supreme Court, for writ of mandamus to the Commissioner of the General Land Office.

*T. W. Gregory* and *G. W. Allen,* for relator.—There is nothing in the law relating to the sale of the public free school lands of the State, under which the purchase in controversy was made, that prohibits a minor from purchasing said land, if the Commissioner of the General Land Office, who is charged with the duty of selling the same, sees fit to award land to a minor under his application to purchase.   Weatherford v. McFadden, 21 Texas Civ. App., 260.

The contract of a minor is never void, except in cases where the same contract would be void if entered into by an adult person, but only voidable at the option of the minor.   Cummings v. Powell, 8 Texas, 84; Stuart v. Baker, 17 Texas, 418; Bingham v. Barley, 55 Texas, 285; Ferguson v. Railway, 73 Texas, 346; Askey v. Williams, 74 Texas, 294; all text-books.

The State having received the full value of the land, and the price at which it was placed on the market, and there being no evidence of fraud in procuring the award of the land to the minor on her application, the court can not set aside the contract made between the State and said minor.

We submit that there is absolutely nothing in the law that prohibits the sale of the public free school lands to a minor.   The purpose of the law under which the application to purchase in this case was made was to obtain revenue or income for the public free schools.   This is shown from the law itself, and besides, is a matter of common knowledge and history.   What did it matter to the State who purchased these lands, so long as it received their value, which value was ascertained according to law?   There was nothing in that law that prescribed residence on the land or even residence in the State, the law being absolutely silent as to those features.   It was therefore clearly the intention of the Legislature in passing the law to raise money for the public free schools.   When the minor entered into the contract with the State, that contract had the same status as a contract made between the minor and an individual.   It could not be repudiated by the minor until he arrived at his majority, and if the State received the money by virtue of that contract, as it did in this case, it can no more set up the voidableness of that contract than could an individual if made with such

individual. In addition to this, after the money was obtained by the State from the minor, even if the minor attempted to repudiate after he attained his majority, there was no way by which he could secure a return of the money he had paid, because he could not sue the State. So, what did the State lose by its contract with the minor? It has received every dollar it would have received if the original contract had been made by an adult person, and even if it had not done so it could have gotten the land back by forfeiture for nonpayment, which is all that it would have gotten if an adult person had been the purchaser, for who ever heard of a suit being brought by the State to recover a personal judgment against the purchaser of school land on his obligation, except under the law that required suit to be brought in order to work a forfeiture?

*T. S. Smith*, Attorney-General, and *R. H. Ward*, Assistant, for respondent.—The most important question in the case is as to whether or not a minor can buy the public lands of the State. Respondent contends that it was not the intent of the law to confer upon minors the right to buy, or upon the Commissioner the right or authority to sell to minors the public lands of the State.

The purchaser was required by the law to make application for the purchase of the land; the application, after having been presented to the surveyor, was then required to be forwarded, together with one-twentieth of the appraised value of the land, to the State Treasurer, who then opened an account with the purchaser. As soon as the application was received by the surveyor, the applicant for purchase was required to execute his obligation or promissory note for the balance of the appraised value of the land, agreeing and stipulating to pay the Governor, on the first day of January of each year, one-twentieth of the amount of his obligation or promissory note, with 8 per cent interest of principal as may be due at the date of each payment.

In section 602, Hall's Mexican Land Law, it is said "* * * that a minor can not denounce public land, except when he has become of full age by special law and authorized to make contracts." In the case of Tatro v. French, 33 Kansas, 49, it was held that "A person under 21 years of age can not obtain a pre-emption right under the laws of the United States."

What is implied in a Statute is as much a part of it as what is expressed in it. If this statute means that only persons who can make binding contracts have the right to buy lands, then it follows that only adult persons can purchase, and the statute should be read as if these words were in it.

In the case of Gimm v. Culverson, 5 Sawyer (U. S.), 605, it was held: "The applicant for pre-emption under the statute of May 30, 1862, authorizing settlements upon California lands, must have all of the qualifications prescribed under the general pre-emption law."

An infant can not be appointed executor or trustee, for want of

discretion, and because of inability to execute binding bond to secure faithful performance of duty. 10 Am. and Eng. Enc. of Law, 616, and the authorities cited in notes..

In the case of Carrell v. Potter, 23 Michigan, 377, it was held specific performance will not be decreed in favor of the assignee of an agreement for the conveyance of land, where the purchaser in such agreement was an infant when the agreement was executed and assigned the same during minority, without proof that the infant affirmed the same after becoming of age.

Infants are not included in bankruptcy or insolvent laws, although the language of the statute is broad enough to include them. 10 Am. and Eng. Enc. of Law, 641; Farris v. Richardson, 6 Allen, 121.

In the case of Weatherford v. McFadden, 21 Texas Civil Appeals, 260, the Fort Worth Court of Civil Appeals held: "But the question suggests itself, did the Legislature intend to authorize the Commissioner of the General Land Office to sell the school land to minors? The homestead donation law allows a single man of the age of 15 years or over to acquire eighty acres of vacant and unappropriated public lands (Revised Statutes, article 4161); but we know of no similar provision in the law providing for the sale of the school lands. Purchasers under that law are required to execute their written obligations to the State for the deferred payments of purchase money, principal and interest, which would seem to indicate that persons under legal disability of minority were not contemplated as purchasers."

WILLIAMS, ASSOCIATE JUSTICE.—The plaintiff, by original proceeding instituted in this court, seeks by mandamus to compel the respondent, as Commissioner of the General Land Office, to issue to him a patent for a section of land belonging to the public school fund to which he claims right under a purchase thereof made by Ellen Clarke under the provisions of the Act of July 8, 1879, and of the act amendatory thereof, approved April 6, 1881, regulating sales of such lands. Laws Spec. Ses. 16th Leg., p. 23, et seq; Laws Reg. Ses. 18th Leg., p. 119, et seq.

The facts upon which his claim depends are these: Ellen Clarke, at the time a minor between 11 and 12 years of age, made application on the first day of October, 1881, for the purchase of the section, and thereafter all things required by the statute were done so as to give rise to a contract between her and the State for the sale and purchase of the land, unless the fact of her minority prevented the creation of such contract. The payments required by the law upon such a purchase were made thereafter by her until the latter part of 1882, when her interest in the land was regularly sold and conveyed by her guardian, under orders of the probate court, to plaintiff, who assumed payment of the balance due from her to the State. No notice of this sale was filed in the Land Office, and the account continued to stand in the name of Ellen Clarke. In her name all subsequent payments were made

by plaintiff, until all the money required by her obligation had been paid. Plaintiff then, on the 29th day of March, 1899, filed in the Land Office his deed, paid the necessary fee, and demanded the issuance of a patent to himself. This was the first information received by the officers of the State of Ellen Clarke's minority and of plaintiff's purchase of her title. The Commissioner refused to issue the patent on the ground that a sale to a minor was not authorized by the law. Whether or not this is true constitutes the principal question presented.

Section 6 of the statute provides that "any person desiring to purchase" shall make the prescribed application and do the prescribed acts. No persons, natural or artificial, are, in express terms, excluded from purchasing. No qualifications are prescribed for purchasers, as that they shall be actual settlers, such as are found in subsequent statutes. If minors are prohibited from buying, it is by implication arising from the nature of the acts and obligations required of purchasers.

Section 8 requires any applicant to execute his obligation for the unpaid balance of the appraised value of the land, stipulating to pay one-twentieth of the amount on the first day of January of each year, with 8 per cent interest on such amount of the principal as may be due at the date of each payment. It further provides that such purchaser may pay the entire purchase money at the date of purchase, or such amount of principal and interest as may be due at any subsequent time; that any payment of principal may be deferred for one or more years, but that all interest shall be paid annually, on or before the first day of March of each year, and the whole amount shall be paid in twenty years.

No provision is made for a suit upon the obligation, or other action to enforce collection, in case of default; but section 12 requires the Commissioner, in case any installment of interest shall be unpaid on the first of March following its maturity, to cause judicial proceedings to be instituted to declare a forfeiture of the purchase. No such proceeding is directed in case of failure to pay the principal after its maturity.

The obligation which all purchasers, except those who choose to pay cash, are required to execute is such as a minor can not impose upon himself, and clearly shows to our minds that the Legislature did not contemplate purchases by them.

Again, section 15 provides that any purchaser may sell the land bought by him, and, upon the filing of his transfer in the Land Office, the vendee shall be liable to the obligations of the original purchaser; and, upon final payment of purchase money, the Commissioner is required to issue the patent to such assignee. This, also, permits the doing of an act which a minor, on general principles, can not legally do. It contemplates a conveyance, final and binding on the party executing it, and not one which the party may be at liberty to avoid at will; for it gives complete effect to the conveyance by a substitution

of the assignee for the purchaser, by requiring the discharge of all obligations by him, and the issuance of the patent to him.

It is true that a statute may capacitate a minor to enter into special engagements such as the general rule of law would hold not to be binding on him. A statute which in terms requires or permits a minor to enter into an obligation would have the effect of removing, to that extent, his disability and of making such obligation valid. Sedgwick Const. Stat. Law, p. 81; Bishop on Con., sec. 922. "But mere general words in a statute are not ordinarily interpreted to exclude infants from their privilege of minority." Bishop, ut supra.

This rule of construction would require that in order to take away the incompetency of minors, so far as to permit them to execute binding obligations, the intention to do so must affirmatively appear in the statute and is not to be deduced from the mere use of general words, such as "any person." No such intention appears in the statute under consideration. If the Legislature had intended such a result, a rule on the subject would doubtless have been made and the age of such minors as were permitted to contract would have been prescribed. As it is, the proposition that this statute includes minors would lead to the absurdity of allowing all infants, whatever their ages, to become parties to these transactions.

It would seem plain that the requirement that all who purchase should execute obligations, excludes from those who may purchase persons who are legally incapable of complying with such condition. The law intends that an effectual obligation shall be taken, one that will bind the purchaser, and a person who can not make it can not comply with the law.

It is urged that the validity of the obligation was not essential to the purpose in view in selling the land, since there was no purpose to sue on the obligation, but merely to assert the rights of the State by a forfeiture for default in payment, which could be done against a minor as well as an adult; that the contract, at the worst, was only voidable and could not be repudiated by the State and could only have been repudiated by the minor after she reached majority, and that then she could not have recovered the purchase money since she could not sue the State.

We think it too clear for argument that when the statute required the giving of an obligation, it meant a legal and binding one. The fact that it only provides for a forfeiture for nonpayment of interest does not show a contrary intent. The State would have the same right of action upon such an obligation as an individual would have had; and if its officers were not authorized by then existing laws to institute proceedings upon it to collect the money thereby promised, the Legislature could at any time have conferred such authority. Fristoe v. Blum, 92 Texas, 76.

Again, the provision for forfeiture prescribed a remedy only for default in payment of interest and not for failure to pay principal.

A purchaser might promptly pay interest as it fell due, but leave the whole of the principal unpaid. In such case, unquestionably, the State could have the remedies existing at common law and in equity to enforce collection. But, aside from speculation of this kind, the exaction of an obligation is enough to show that an effectual promise to pay the purchase money was intended.

Again, it is urged that the privilege given to purchasers to pay the whole of the purchase money in cash could be exercised as well by a minor as by an adult. But no distinction is made between purchasers. What one may do all may do, and no discretion is given to the officers to discriminate between them. If a particular applicant may purchase by paying cash, he may purchase on credit, and the officers of the State would have no power to deny his right. It is equally true that if one minor may purchase, all minors may purchase, without reference to age or discretion, since the statute prescribes no rule as to this under which a restriction could be imposed by the officers or by the courts. If the statute can not be construed as so far removing the disability of minority, a minor paying cash could avoid such a purchase, and, on his doing so, the State, in good faith, would be bound to refund the purchase money. It could not be sued without its consent, but this would not justify a refusal to recognize a legal right, and the Legislature should not be held to have intended such a wrong. Statutes general in their language have often been held inapplicable to minors because the things required or permitted were such as, by general principles, minors were incapacitated from doing. Tyler on Infancy, pp. 36, 37; Farris v. Richardson, 6 Allen, 121.

To say that the contract was only voidable is to assume that there was a contract binding on the State but not on the minor. This might have been the true status had both parties been individuals. When there is a contract between the State and an individual, it is true also, that, ordinarily, the same rights, duties, and obligations result from it as would exist, under the same facts, between individuals. But the State could only become a party to a contract, such as is contemplated by the statutes under consideration, by a compliance with their terms. The acts of the officers mentioned in the statutes are not the acts of the State unless they are such as the statute authorizes. They are invested with no discretion in contracting or refusing to contract. The State's offer to sell is expressed in the terms of the statute, and it becomes bound only when a purchaser accepts and complies with them; and if an applicant is not entitled, under the law, to purchase, no contract arises from his doing the things specified in the statute. For this reason, the principles by which the rights of the parties to a contract between individuals where one of them is a minor are governed, can not be applied in determining whether or not a contract arose in this transaction between the State and the minor.

Since the offer of the State was not extended to minors, it must be held that the doing of the acts mentioned in the statute created no con-

tract, and it follows that the plaintiff must fail in this proceeding. Nothing was done by him which could be held to be a purchase by him from the State. He has only such rights as accrued to the original applicant. The respondent can not be forced by mandamus to issue the patent to him unless the State is bound to do so, and the State is not so bound under this statute, in the absence of a contract concluded under its provisions.

The fact that the money has been paid to the Treasurer and has doubtless been used for the benefit of the State, and that thus the purpose of the Legislature in authorizing the sale of these lands has been met, certainly raises a strong equity in behalf of the plaintiff, for the consideration of those who may act for the State in granting relief. But the acts of the Treasurer in receiving and disbursing the money, being outside the authority given by the statutes, were no more the acts of the State than were the acts of those who originally entertained the application of the minor. The Treasurer had no more power to ratify the sale than the Commissioner had to make it. The Floyd Acceptances, 7 Wall., 666; Delafield v. State of Illinois, 2 Hill, 175.

The existence of the equity referred to can not justify this court in requiring the respondent to issue a patent to satisfy it when the State has not agreed to issue it, and there is therefore no duty resting on its officer to do so.

*Writ of mandamus refused.*