## Q. F. WALKER v. R. W. FINLEY, COMPTROLLER.

### No. 939. Decided November 8, 1900.

**1. Mandamus—Comptroller—Warrant Refunding Payment on Land—Approval of Governor and Attorney-General.**

Before the Comptroller can draw a warrant for repayment of money paid on a purchase of land from the State by one who can not obtain title, the claim must be approved by the Governor and Attorney-General (Laws 1895, p. 162; Appropriation Act, Laws 1899, p. 270). Where, refusing such approval, they certify the facts, mandamus will not lie to compel the Comptroller to issue the warrant, whether, under the facts certified, they should have approved the claim or not. (Pp. 146-148.)

**2. Same—Statutes Construed.**

The purpose of the Appropriation Act of March 1, 1899 (Laws 1899, p. 270), in requiring the certificate of the Governor and Attorney-General to the correctness of claims of purchasers of school land for a refunding of purchase money paid, was to restrict the power of the Comptroller and relieve him of the duty of applying the law to the facts; the Commissioner of the General Land Office was required to certify to the facts; they were not found in the records of the office of either the Governor or the Attorney-General; their certificate, it was meant, should pass upon the legality of the claim; and without their approval, though they certified the facts, the Comptroller was not authorized to issue a warrant. (P. 148.)

**3. School Land—Purchase by Minor—Assignee—Refunding Payments.**

A minor having made contract to purchase school land, her claim was sold in guardianship proceedings to W., who, without filing his transfer in the Land Office, completed the payments; mandamus to require issuance of patent was refused on the ground that the purchase by the minor was illegal (Walker v. Rogan, 93 Texas, 248); on the claim of W. for a refunding of the money paid, the Governor and Attorney-General certified the facts, but refused approval of the claim on the ground that W. was not a purchaser within the meaning of the Appropriation Act (Laws 1899, p. 270), and because the original sale was to a minor. Held, that the Comptroller could not be required by mandamus to issue a warrant for the claim upon such certificate. (Pp. 146-148.)

ORIGINAL APPLICATION by Walker to the Supreme Court for mandamus to require respondent, the Comptroller, to issue warrant.

*Gregory & Batts* and *G. W. Allen*, for petitioner.

*T. S. Smith*, Attorney-General, 'and *T. S. Reese*, Assistant, for respondent.

No briefs for either party were on file.

GAINES, CHIEF JUSTICE.—This case was brought by the petitioner in this court to compel the respondent to draw his warrant upon the State Treasurer for a claim against the State.

The facts, as disclosed by the petition and answer, briefly stated, are, that in 1881, one Ellen Clarke, a minor, made application for the purchase of a section of school land; that she complied with the forms of the law, made the first payment as required by the statute, and was recognized by the Commissioner of the General Land Office as a purchaser; that in 1883 the petitioner acquired all the interest of the minor in the land, and thereafter, without filing his conveyance in the General Land Office, paid in full, in her name, the balance of the purchase money, amounting to the sum of $1300. The Commissioner of the General Land Office in office at the time the payments were completed declined to issue a patent to the petitioner, and in a proceeding brought by the latter to compel that officer to do so, this court held the original purchase by the minor void and refused the writ of mandamus. Walker v. Rogan, 93 Texas, 248. The petitioner then obtained a certificate of the facts from the Commissioner and presented his claim to the Governor and Attorney-General for approval. They declined to approve the claim, but in lieu thereof gave him a certificate which is as follows: "We hereby certify that the following facts appear in the record in the matter of application for refund of the money paid in on account of the application to purchase section 6, Texas & New Orleans Railway Company land in Colorado County, Texas, in the name of Ellen Clarke: The sum of $1300.90 was paid into State treasury by Q. F. Walker on account of the said purchase, but at the time said payments were made, the said Walker had not filed a transfer from the original purchaser, Ellen Clarke, to the land in question; before any of the payments were made by said Walker, however, the said Walker had acquired all the right, title, and interest of the said Ellen Clarke in and to said land by a regular sale in course of guardianship proceedings, taken out upon the estate of the said Ellen Clarke, she being a minor at the time of said application to purchase and at the time of said sale to Walker. We therefore find that Q. F. Walker is not entitled to a refund of the said sum of $1300.90 for the fact that he had not filed his transfer in the Land Office at the time he made said payments and therefore was not a purchaser within the meaning of the appropriation

bill; and also because said original sale was made to a minor who was not authorized to purchase school land." Treating this certificate as an implied approval of his claim, the petitioner next presented it to the Comptroller with the demand that he issue his warrant therefor. The Comptroller having declined to comply with the demand, this suit was brought.

In 1895, the Legislature, amending the existing law upon the subject, passed an act containing the following provision: "That upon proper proof being made to the Comptroller that money has been in good faith paid into the State Treasury upon lands for taxes, lease, and purchase money, for which, on account of conflicts, erroneous surveys, or illegal sales, patents can not legally issue, or upon lands for which patents have issued and have been or may hereafter be legally canceled, the Comptroller is hereby authorized to issue his warrant for the amount so paid into the treasury in favor of the parties who have in good faith paid such money for which they receive no consideration; provided, that this act shall not apply to surveys the errors in which may be corrected; and provided further, that whenever the official records of the General Land Office shall show that patents for such lands can not legally issue upon such surveys, on account of conflicts, erroneous or illegal sales, or that patents issued on such lands have been legally canceled, it shall be the duty of the Commissioner to issue his certificate to that effect, which certificate filed with the Comptroller shall be sufficient proof to authorize him to act under the provisions hereof." Laws 1895, p. 162. In 1899, in order to give effect to this law, the Legislature made an appropriation, which is found in the "Act making appropriations for the support of the State government for the two years beginning March 1, 1899, and ending February 28, 1901, and for other purposes," and which reads as follows: "To refund to purchasers or lessees of public domain, public school, university or asylum lands, the money paid by them into the State treasury in accordance with any of the laws of this State, and where according to the certificate of the Commissioner of the General Land Office made under the provisions of said chapter 3, as amended by act of the Twenty-fourth Legislature in H. B. No. 358, it is shown that title can not issue or possession pass because of conflict, sales out of lands leased, erroneous sales, and other causes patents can not issue, to be paid out of the respective funds to which said payments were credited, said claims to be approved by the Attorney-General and the Governor, as to correctness of claim and to whom due, to be expended within two years,"— giving the amounts. Laws 1899, p. 270.

We understand the contention on behalf of the petitioner to be that the facts found by the Governor and Attorney-General, as they appear by their certificate, show that he is entitled, under the law, to have his money refunded, and that therefore the certificate is equivalent to an approval of the claim. Whether the proposition that he is so entitled, under the facts so found, be correct or not, is a question we are not

called upon to determine. The purpose of the provision in the appropriation act which requires the approval of the Governor and Attorney-General was, in our opinion, either to restrict the power of the Comptroller or to relieve him of the duty of applying the law to the facts. The law then made it the duty of the Commissioner of the General Land Office to certify the facts, and we are unable to see what useful purpose was to be subserved by requiring the Governor and the Attorney-General to certify them again. The evidence showing the facts is not to be found among the records of either of their offices. Nor do we think it true, as contended, that by the words "as to correctness of claim," the Legislature merely meant the correctness of the amount of the demand. On the contrary, we think it more reasonable to conclude that in requiring that they should determine the correctness of the claim, it was meant that they should pass not only upon the amount but also upon the legality of the claim, thus depriving the Comptroller of the power and relieving him of the duty of deciding whether it be lawful or not. A claim against the State can not be correct which is not a lawful demand against it. To hold that it was the duty of the Comptroller to pass upon a mere certificate of facts made by the Governor and Attorney-General, without the approval of the claim with reference to which they had certified, would be to invest him with a like power and to throw upon him like responsibilities to those which pertained to his office under the former law,—which, we think, it was not the purpose of the provision in question to do.

But it is sufficient to say, for the purposes of this case, that before the Comptroller can draw his warrant for a claim of the character of that in controversy, the Governor and Attorney-General must first approve it, and that, whether rightfully or wrongfully, they have clearly withheld their approval in this case.

The Comproller was right in refusing to draw his warrant, and therefore the writ of mandamus prayed for is denied.