### H. C. Chenowith v. The State.

#### No. 3121.   Decided June 25, 1906.

**1.—Local Option—Sale—Gift.**

Upon a trial for a violation of the local option law, no conviction could occur unless there was a sale of intoxicating liquors. If the beer was given to the alleged purchaser it would not be a violation of the law.

**2.—Same—Publication of Order—County Judge—Four Consecutive Weeks.**

Upon a trial for a violation of the local option law, where the evidence showed that the publication of the order putting local option into force was published for three consecutive weeks in a newspaper published in the county to be affected thereby, when the publication of the order was enjoined by the district court, and thereupon the same order was published in another newspaper in said territory for several weeks by the voluntary act of the publisher, and was not authorized or caused to be published as the law directs by the county judge in said second newspaper, said subsequent publication could not be added to the three prior publications in the first newspaper, to complete the four weeks, and such publication was not in accordance with the law which requires that the county judge shall designate the newspaper, and that for four successive weeks publication shall be had.

**3.—Same—Statutory Requirements—Ratification—Ultra Vires.**

It has been the universal holding of this court in regard to the local option law, that all the statutory provisions precedent to putting the law into operation must be complied with, and unless this has been done, the law will not be operative; and where the county judge did not designate the newspaper and cause the order declaring the result of the election to be published in said newspaper for four successive weeks, he could not adopt or ratify a publication which he did not cause to be made as the law directed.

Appeal from the County Court of Bell.   Tried below before the Hon. W. R. Butler.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $50 and forty days confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

*J. E. Yantis,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Having been convicted of violating the local option law, appellant prosecutes his appeal.

Several questions are suggested for revision, one of which we deem to be of controlling interest. Before passing to the discussion of that question we hold, that the court should have charged the jury in accordance with appellant's request, to the effect that unless there was

a sale a conviction could not occur, or rather if the beer was given to the alleged purchaser it would not be a violation of the law.

The question of serious moment, however, arises from the fact that the issue was made that the law was not put into operation as the provisions of the statute required. The question was raised on bills of exception in regard to the admission of testimony, special charges requested and on demurrer to the sufficiency of the evidence. The facts bearing upon this question are in substance: That after the county judge had designated the Temple Tribune as the paper in which the publication for the four weeks was to be made, and after the publication of the order for three weeks, an injunction was served on the editor of that paper and the county judge, and the fourth publication was never made in that paper. Before the injunction was served on the Temple Tribune, the editor of the Belton Journal-Reporter had an interview with the county judge, in which the county judge stated to him, if the injunction should be served upon the other paper that the publication could then be had in the Belton Journal-Reporter. After the service of the writ on the Temple Tribune, the editor of the Belton Journal-Reporter approached the county judge, Felts, and reminded him of the previous conversation, and requested that the county judge should designate his paper to publish the result. The county judge promptly declined, in the following language: "Mr. Crouch, I have been served with the writ of injunction, and therefore cannot discuss the matter with you further." Crouch, editor of the Journal-Reporter, then of his own volition secured a copy of the order, and inserted it in the Belton Journal-Reporter for two or three weeks, when he was enjoined by an order of the judge of the 11th judicial district. However, he seems to have disregarded the injunction and continued the publication. The certificate of the judge to the publication of the order is in the following language:

"I, G. M. Felts, county judge of Bell County, Texas, do hereby certify, that acting under the instruction of the commissioners court, I selected and designated the Temple Tribune, a weekly newspaper published in Temple, Texas, as a paper in which to make publications of the above and foregoing order, and that the publication of the result of said local option election was published in said paper on August 24, September 4, and September 11, 1903, and that after the third publication thereof by the district judge of the 17th judicial district of the State of Texas [the publication was enjoined], and after which I permitted same to be published the 4th, 5th, 6th and 7th times in the Belton Journal-Reporter, a weekly newspaper published in Belton, Texas, on the 18th and 25th of September, and on the 2nd and 9th of October, 1903, and that the 4th publication having been made in the Belton Journal-Reporter on September 18, 1903, prohibition became effective in Bell County, on September 26, 1903, at 12 o'clock p. m.

Attest: C. K. White, Co. Clk.　　　G. M. Felts, County Judge.
　　By W. J. Lee, Deputy.　　　　　　Bell County."

The bill of exceptions, setting out the above order of the county judge makes it appear that, instead of using the language "I caused the same to be published the 4th, 5th, 6th and 7th times," it reads "I permitted the same to be published the 4th, 5th, 6th and 7th times." There is some difference between "causing" a thing to be done and "permitting" a thing to be done. Following the practice in this court we will take the bill of exceptions as controlling the statement of facts where there is a discrepancy or variance. But we might say that, so far as the merits are concerned, there is practically no difference under the view we take of the main question involved.

It will be noticed that this order of the county judge certifies that it was published in the paper, and the proof further is, that it was published only three times in the Temple Tribune; and that it was published then four times in the Belton Journal-Reporter. The county judge in the order selects the first publication in the Temple Tribune, and adds it to the three publications in the Belton Journal-Reporter, and on the 26th of September makes his certificate and puts the law into operation on the 26th at 12 o'clock. The then subsequent publications in the Belton Journal-Reporter therefore would pass out, the judge's certificate having been made prior to such publications. This is the state of the record.

The publication was not had four weeks in any single newspaper, prior to the making of the certificate by the judge. While there were four publications three of which were in one newspaper, and one in the other, we are of opinion this would be not sufficient. The contention is seriously urged in several different ways in this record that this publication was not in accordance with the law, and that by reason of the publication and certificate either or both, the law was never legally published. It will hardly be the subject of discussion, at least seriously so, that the three publications in the Temple Tribune put the law into operation, because the law required four such publications. It will hardly be the subject of further discussion that the judge under this certificate did not rely upon the four publications in the Belton Journal-Reporter, nor did he make any certificate of that sort putting the law into operation by virtue of such four publications. His certificate is, that the four publications were made in the Belton Journal-Reporter but he only economizes the first publication, and added that to the three publications had in the Temple Tribune. We believe the contention of appellant is correct, that the law was not put into operation as required by the statute. The provisions of the statute require that the county judge shall designate the newspaper, and that four successive weeks publication shall be had. He designated the Tribune but a sufficient number of publications were not made. He did not, under the facts adduced, select the Belton Journal-Reporter. He mentioned the matter to Crouch (the editor), conditionally. When the circumstances occurred Crouch approached him for authority, and he declined to give it. Crouch of his own volition

obtained a copy of the order and published it in his paper. These facts are not sufficient to show that the Belton Journal-Reporter was designated by the county judge. In fact, he declined emphatically to have anything to do with the matter.

It will be seen by reading the terms of article 3391, Revised Civil Statutes, that before the law can go into operation the publication must be had in accordance with the terms of that statute for four successive weeks in a newspaper to be designated by the county judge. Unless this has been done the statute has not been complied with and the law has not been put into operation. It has been the universal holding of this court in regard to the local option law, that all the statutory provisions precedent to putting the law into operation must be complied with, and unless this has been done, the law will not be operative. Ex parte Conley, 8 Texas Ct. Rep., 197. So it has been held that the action of the commissioners court ordering the election, and the election with all of its incidents must conform strictly to the requirements of the statute, or the election will be void. Ex parte Conley, supra; Boone v. State, 10 Texas Crim. App., 418; Prather v. State, 12 Texas Crim. App., 401; Akin v. State, 14 Texas Crim. App., 142; Donaldson v. State, 15 Texas Crim. App., 25; Stallworth v. State, 18 Texas Crim. App., 378; Ex parte Kramer, 19 Texas Crim. App., 123; Smith v. State, 19 Texas Crim. App., 444; Ex parte Sublett, 23 Texas Crim. App., 309; Ex parte Kennedy, 23 Texas Crim. App., 77; Ex parte Burge, 32 Texas Crim. Rep., 459. In Kramer's case, supra, it was said: "If the election was not conducted in accordance with the requirements of the law, it is void, and not merely voidable, and all proceedings had under and by virtue of such void election are absolutely void and may be questioned not only directly but collaterally." Ex parte Schwartz, 2 Texas Crim. App., 74; Ex parte McGill, 6 Texas Crim. App., 498; Ex parte Kilgore, 3 Texas Crim. App., 247. In Donaldson's case, supra, this court said: "That the local option law being for a particular locality only, it is a quasi-local or special law, and depends for its validity upon its adoption in conformity with the law permitting its adoption. So in regard to posting notices it has been held with unvarying certainty as a prerequisite to the validity of the election that the necessary statutory notices be posted for the time required by the statute; that the omission of one or more of the five notices would render the election invalid. Ex parte Conley, supra; Smith v. State, 19 Texas Crim. App., 444; Swinson v. McLaurin, 21 S. W. Rep., 300; Frickie v. State, 45 S. W. Rep., 810; Bowman v. State, 40 S. W. Rep., 798; Bowman v. State, 41 S. W. Rep., 635; James v. State, 21 Texas Crim. App., 353. So it has been held further, that the election will be invalid where it was not held within the time specified by the statute; that is, in not less than fifteen nor more than thirty days after the order was entered for such election. Curry v. State, 28 Texas Crim. App., 475; King v. State, 33 Texas Crim. Rep., 547. Conley's case, supra. These are

sufficient authorities, it occurs to us, to demonstrate that it is a prerequisite to the validity of the local option election that the prerequisite terms of the statute should be complied with in order to put it into operation. It has been also held by an unbroken line of authority, that, if there be an issue on the trial whether the prerequisite steps have been taken, the jury shall be appropriately charged in regard to the matter, and thus leave to their decision whether the law had been put into operation, and if they should find that it had not been, the jury should be instructed to acquit. Gaines v. State, 37 Texas Crim. Rep., 73; Chapman v. State, 37 Texas Crim. Rep., 167; Bowman v. State, 38 Texas Crim. Rep., 14; Shields v. State, 38 Texas Crim. Rep., 252; Frickie v. State, 39 Texas Crim. Rep., 254; Hob Jones v. State, 43 S. W. Rep., 981; Grammer v. State, 2 Texas Ct. Rep., 85. Many other decisions of this court could be added to the list of cases already cited. It may be mentioned in this connection that, since the case of Irish v. State, 29 S. W. Rep., 778, where there is no issue as to the validity of the election, the court may instruct the jury the law is in force; but where the evidence suggests an issue, then it must be submitted to the jury for their decision as a question of fact.

By the terms of article 3391 the law has imposed the duty upon the county judge to designate the newspaper, and have the order declaring the result published in said newspaper for four consecutive weeks. It is a duty that the law imposes upon him, and with which the commissioners court seems to have no concern. Dreschsel v. State, 35 Texas Crim. Rep., 577. Then, the conclusion seems to be irresistible that as a prerequisite to the certificate of the judge, the publication must occur for the four successive weeks, or in the absence of paper the posting of proper notices for that length of time. If this conclusion is correct, and of which we have no doubt, then this publication for the four successive weeks is a prerequisite antecedent condition to the law going into effect. That the county judge did not designate the Belton Journal-Reporter is made evident, as we understand this record, by two uncontroverted facts: first, his certificate; and second, the testimony of the editor of the Belton Journal-Reporter, which testimony has heretofore been mentioned. If it be contended that the first publication in the Belton Journal-Reporter on September 18th could be added to the three publications in the Temple Tribune, then in order for that to have occurred the county judge must have designated the Belton paper. This he did not do, and the editor so testified. After the publication in the Journal-Reporter, the act of the county judge endorsing that publication or adopting it or ratifying it, would not be legal. An officer charged with a duty must perform that duty under the terms of the law that imposed the duty. He cannot do it otherwise and make it legal, nor can he adopt the act of another who does and make it legal. A public officer is not authorized to ratify the act of others. The duty is imposed upon him

and in accordance with the terms of the statute. There is a marked distinction at this point between the ratification of the act of an agent, where the matter occurs between private parties, and where it is between a public officer and other parties. This principle has been overwhelmingly recognized and it is hardly necessary to cite authorities. But we refer to all the authorities already cited in this opinion in support of this proposition, for they all demonstrate the fact that in order to put the law into operation the terms of the law itself must be complied with. We find no decision from this court to the contrary. The principle is the same here in regard to publication as it is in regard to giving notice for the election, declaring the result, etc. It would hardly be contended that the election would be valid where private individuals posted the notices when it is made the duty of the clerk to post or cause to be posted such notices, and the adoption by the clerk of such posting after the election would not make it his act. This question has also been before our Supreme Court in Walker v. Rogan, 93 Texas, 248. That decision was in regard to a contract between the land commissioner and Walker, and the question there was one of ratification. The court said: "But the State could only become a party to a contract, such as is contemplated by the statutes under consideration, by a compliance with their terms. The acts of the officers mentioned in the statute are not the acts of the State, unless they are such as the statute authorizes. They are invested with no discretion in contracting or refusing to contract. The State's offer to sell is expressed in the terms of the statute, and it becomes bound only when the purchaser accepts and complies with them. If the applicant is not entitled under the law to purchase no contract arises from his doing the things specified in the statute. For this reason the principles by which the rights of parties to a contract between individuals, where one of them is a minor, cannot be applied in determining whether a contract arose in this transaction between the State and the minor." The provisions of the statute under review by our Supreme Court did not extend to or include minors, and it was held, therefore, that the doing of the act mentioned in the statute created no contract, and a mandamus to carry out the contract was refused. That decision cites the following authorities in support of it, and which clearly sustain the conclusion reached. The Floyd Acceptances, 7 Wallace, 666; Delafield v. Ills., 2 Hill, 175. Practically to the same effect is the recent case of Mound Oil Co. v. Terrell, decided at present term of our Supreme Court. One of the leading cases upon this question is found in 45 Mo., 528. To the same effect is 20 Maryland, 1. 26 Wend. (N. Y.), 192; 50 Iowa, 254; 19 Amer. & Eng. Ency. of Law, 1 ed., p. 474, notes 1, 2, 3, and 4, for collation of authorities. It is said that nothing short of an express act of the Legislature can validate an act done in contravention of statutory law. State v. Bank of Mo., 45 Mo., 528; Peo. v. Phœnix Bank, 24 Wend., 431; Brown v. Mayor of New York, 63 N. Y., 239.

In re Van Antwerp, 56 N. Y., 261. To the same effect is Day Land & Cattle Co. v. State, 68 Texas, 526. And it has been held that an act which is entirely void not for want of formality or regularity, or for mistake as to time, etc., but for want of power under the law, cannot be ratified even by the Legislature. A great many cases are cited in support of this proposition, and are found collated in note 4, on page 474, vol. 19 Amer. & Eng. Ency. of Law, 1 ed. Some of these cases have already been cited. We desire to add to these, Mc-Cracken v. San Francisco, 16 Cal., 616; 21 Cal., 351; 6 Iowa, 304; 46 Mo., 376; 13 Ohio, 116; 71 N. Y., 513; 18 Cal., 590.

This being a local option law, the Legislature itself could not make the act of publication in the Belton Journal-Reporter a legal publication. There is no way under this law to make this a valid publication, except by having it done in accordance with the terms of the statute prescribing the method and manner of the publication.

It is also a sound proposition, as we understand, that the act of ratification must be the act of the sovereign power, or its authorized agents, acting in the manner prescribed by law. 32 New Hamp., 118; 16 Cal., 255; 62 Maine, 330; 13 Maine, 466; 16 Cal., 591. The unofficial conduct of individuals has no controlling effect. Authorities already cited, and for collation of other authorities, see 19 Amer. & Eng. Ency. of Law, 1 ed., vol. 19, p. 476, and notes. It has been held that a municipal corporation cannot ratify an ultra vires contract by subsequent action. 117 Iowa, 25; 115 Wis., 340; 68 S. W., 605; 44 Pa. St., 9. We therefore hold that the act of the county judge undertaking or seeking to adopt or ratify the act of the editor of the Belton Journal-Reporter was ultra vires, beyond his authority and void. The testimony is uncontradicted in regard to this question and apparently admitted to be true. If on another trial this should be found to be the real status, we hold that the law has not been put into operation for want of a proper publication. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Brooks, Judge, absent.