## JOHN ELKINS v. THE STATE.

No. 8064. Delivered October 7, 1925.

### 1.—Manslaughter—Voir dire Examination—Latitude of.

Where on a trial for manslaughter, it was not error for the trial court to refuse to permit a juror on his voir dire examination by appellant, to be asked "if *he* would act upon the appearance of danger to the extent of taking human life, if it appeared necessary, the juror having already testified that he believed a man had a right to act upon the appearance of danger, even to the extent of taking human life if necessary. Distinguishing Reich v. State, 251 S. W. 1072 and cases therein cited.

### 2.—Same—Evidence—Held, Erroneously Admitted.

Where the state was permitted to prove, by witnesses Pittman and Collins, that they had heard the witness Grimes testify on the former trial, (and to also permit witness Grimes to testify), that appellant on a former occasion, about a year prior to the homicide, had threatened to shoot his, (the witness Grimes) brains out, with a gun, we are clearly of the opinion that the receipt of such testimony was erroneous.

**3.—Same—Bills of Exceptions—Practice—Rule Stated.**

It seems to be the established rule of practice in this court, that in a matter of conflict between the bill of exceptions, and the statement of facts, that the bill of exceptions will control. The contention of the state that appellants bill of exception, discussed in the next preceding paragraph, should not be considered by us because the statement of facts does not show that the testimony complained of, was in fact admitted. We cannot agree with this contention. Following Chenowith v. State, 50 Tex. Crim. Rep., and other cases cited.

**4.—Same—Evidence—Suspended Sentence—Erroneously Admitted.**

Where an application for a suspended sentence is presented, this does not justify introduction of isolated specific acts of misconduct on the part of the accused, which had not been merged into prosecutions of any kind, nor did the fact that appellant was a witness in his own behalf warrant the introduction of specific acts of collateral misconduct for the purpose of impeachment. The procedure authorized, under such circumstances, being to prove the general reputation of the accused, or to prove that he had been convicted of a felony in this, or some other state. Following Johnson v. State, 241 S. W. Rep. 484, and cases there cited.

**5.—Same—Evidence—Irrelevant and Hearsay—Improperly Admitted.**

Where evidence, on the instant trial, was admitted that since the homicide the father of appellant had died, and devised by will all of his property to appellant, oral testimony of the contents of the will being admitted, we are at a loss to understand upon what theory such evidence was permitted. It was not the act of appellant, but of his father, and had no possible connection with or relevancy to the case, and might have been used by the jury to the prejudice of the accused.

**6.—Same—Evidence—General Reputation of Deceased—Rebuttal, held Proper.**

Where in the instant case, the general reputation of the deceased as a law-abiding citizen having been put in issue, appellant should have been permitted to show that deceased bore the reputation of a boot-legger and violator of the liquor laws, and that appellant had been so informed. We think however that the exclusion of this testimony was not of a nature warranting a reversal of the case.

**7.—Same—Evidence—Motives of Deceased—Undisclosed, Not Admissible.**

Where on the trial of homicide cases involving the issue of self-defense evidence of the undisclosed motives of the deceased, are not admissible. The testimony of Mrs. Pope, that on the day of the homicide, appellant had gone to town to get some medicine for his grandmother, was violative of this rule, there being no suggestion that appellant knew deceased had gone to town for such purpose.

**8.—Same—Charge of Court—Requested Instruction—Properly Refused.**

Where appellant presented a special charge to the effect that the father of the appellant had a right to call upon him for assistance in recovering his place, such charge was objectionable in that it singled out, and presented an isolated fact in the case, and it was properly refused.

**9.—Same—Misconduct of Jury—Verdict by Lot—Not Shown.**

Where on a motion for a new trial, appellant sets up the alleged fact, that the verdict was reached by lot, and the evidence heard upon the issue is conflicting to a degree, the decision of the trial judge against this contention, is binding upon this court.

Appeal from the District Court of Coleman County. Tried below before the Hon. J. O. Woodward, Judge.

Appeal from a conviction of manslaughter; penalty, four years, and nine months in the penitentiary.

The opinion states the case.

Critz & Woodward, for appellant

Tom Garrard, State's Attorney, and Grover C. Morris, Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—Upon an indictment for murder, appellant was convicted of manslaughter; punishment fixed at confinement in the penitentiary for a period of four years and nine months.

The deceased, Norman Weaver, was occupying a farm which belonged to the father of the appellant and upon which, as we understand the record, appellant's parents resided. The homicide took place on the 2d day of January. Some time antecedent to that date, the appellant had arranged to occupy the premises for the succeeding year. According to the appellant's theory and testimony, as well as other testimony in the case, Weaver's conduct about the premises had been objectionable to the appellant's father. There was suspicion entertained by him and the appellant that Weaver was engaged in manufacturing whiskey upon the premises, and there is a great deal of testimony detailing certain circumstances and accusations against Weaver touching violations of the law.

Appellant had consulted attorneys with reference to dispossessing the deceased and had received assurances that possession of the premises would be surrendered on the first day of January. In the meantime, according to the appellant, he had been forbidden by the deceased to come upon the premises and many threats had been made to take his life if the orders were disobeyed. There was also testimony of threats upon the part of the appellant to take the life of the deceased in case he did not move off the premises.

On the day that the homicide occurred, appellant went to the court-house and into the office of the county attorney and there had a conversation with him. He informed the county attorney that the deceased had not removed from the premises in accordance with his promises and had indicated his intention to remain upon it. Appellant was advised by the prosecuting attorney what his rights were in a civil suit to secure possession. In the meantime, according to the appellant, his father and mother were very much dissatisfied with the conduct of Weaver upon the premises. After leaving the county attorney's office, appellant entered the court room and there, in the presence of the constable, Mr. Pipes, met the deceased. Before this

meeting took place, according to pipes, the deceased said that he want-
ed to talk to him (Pipes) and the two went into the court-house
and 'near the stand used by the judge when the court was in ses-
sion. Deceased inquired of Pipes whether he had seen the appel-
lant and was told that the appellant was making arrangements to
move, when deceased said:

"You tell him he had better stay away, that I have that place
rented and have possession, and I am going to keep it."

According to his testimony, Pipes declined to carry any mes-
sages to the appellant. Deceased then said:

"Well, I rented that place and I am going to keep it. John
claims he has, but I have, and I am going to keep it."

Before the conversation ended, appellant entered the room, ap-
proached the deceased and Pipes, said, "Good morning," and shook
hands. He then said to the deceased:

"I understood you were looking for me and wanted to see me."
Deceased said:

"Yes, I understand you are going to move out there."

At this juncture Pipes left and went into an adjoining room
occupied by the county attorney, where he had some business await-
ing him. Immediately after entering the county attorney's office
he heard a gun fire. Upon his return he saw the appellant with a
pistol in his hand. Deceased was lying upon the floor, having been
shot in the region of the heart. Appellant said:

"Mr. Pipes, he made me do it; he made me do it.

The county attorney then entered, and appellant said:

"I have appealed to the law, but he made me do it."

Appellant testified that before the shot was fired the deceased
used some unprintable and abusive language towards him, made a
demonstration which appellant interpreted as an attempt to draw
a pistol, whereupon he fired.

The above is but a brief synopsis of the salient facts which are
deemed sufficient, together with such remarks as will be made in
connection with the several bills of exception, to illustrate the
legal questions involved.

In the organization of the jury, appellant sought to ask a venire-
man if he would act upon the appearance of danger to the extent
of taking human life if it appeared necessary. As we understand
the record, the juror had testified that he believed a man had a
right to act upon the appearance of danger even to the extent of
taking human life if it reasonably appeared necessary. The refusal
of the court to permit further inquiry is not shown by the bill to
have been injurious or improper. In the opinion of the writer,
it called for speculation and opinion upon the part of the juror as
to what he would do under given circumstances, and that in re-
fusing to permit it the court did not abuse the discretion which

the law vested in him to hold within proper bounds the inquiry of veniremen upon their *voir dire.* This conclusion is not deemed in conflict with the principles stated in the case of Reich v̇. State, 251 S. W. Rep. 1072, and cases therein cited.

In bill No. 1a, it appears that the witnesses, Collins and Pittman, while testifying upon the part of the State, were each permitted, over objection of the appellant, to testify in the presence of the jury, in response to questions propounded by the State's attorney, that at the former trial of the appellant upon the present indictment the witness had testified that they had heard that the appellant had threatened to shoot out the brains of Oscar Grimes. In Bill No. 3, it is recited that Oscar Grimes was called upon the witness stand and that during the debate the jury was retired. The bill recites:

"Whereupon counsel for the defendant informed the court, out of the hearing of the jury, the witness, Oscar Grimes, who was then in the witness chair, was the same witness and the same person referred to by the witnesses, Collins and Pittman, when they each testified that they had heard at the former trial of the defendant, that the defendant had threatened to shoot Oscar Grimes' brains out and was the same witness who had testified upon the former trial as referred to by defendant's counsel."

As shown by the bill, appellant objected to the witness Grimes giving testimony to the effect that the appellant had threatened to blow his brains out. The bill further states:

" * * * which objections were by the Court overruled and the State was permitted to prove by the witness and he did testify that the defendant had about a year before the killing of Norman Weaver, threatened to shoot his, the witness', brains out with a gun."

It is contended by the State's counsel upon the present hearing that the bill is indefinite and does not conclusively show that the witness, Grimes, gave objectionable testimony in the presence of the jury. Upon the present hearing State's counsel further insists that in view of this supposed indefinite nature of the bill, that the statement of facts should be looked to, and that inasmuch as the statement of facts does not show that Grimes gave the testimony in question, the bill should be disregarded.

It seems to be the established rule of practice in this court that in a matter of conflict between the bill of exceptions and the statement of facts that the bill of exceptions controls. See Chenowith v. State, 50 Texas Crim. Rep. 240; Pitts v. State, 60 Texas Crim. Rep. 528; Hardy v. State, 31 Tex. Crim. Rep. 292; Ezzell v. State, 29 Texas Crim. App. 523; Briscoe v. State, 27 Texas Crim. App. 193.

We confess our inability to agree with counsel for the State in their contention that the bill in the present case was indefinite touching the testimony given by the witness Grimes. As we understand the bill, it is explicit to the effect that Grimes did testify before the jury that appellant had on the former occasion which was entirely disconnected from and subsequent to the present and to the homicide upon which this prosecution is founded, threatened to blow out the brains of Grimes. The bill, moreover, in connection with Bill No. 1a, to which we have adverted, makes it clear that the appellant reserved a bill of exceptions to the testimony of the witnesses, Collins and Pittman to the same effect, in substance, that they had heard Grimes testify on the former trial that the appellant had threatened to blow out the brains of Grimes. In the state of the record, it occurs to us that we are not warranted in ignoring the bill of exceptions raising the question as to the soundness of the court's ruling in receiving the testimony, both of Collins and Pittman and of Grimes upon the subject in hand. Under the authorities to which we have adverted, we think the record discloses in this court that the testimony mentioned was given before the jury and that timely and appropriate objections were made and overruled and exception duly reserved. This court feels called upon to pass upon the legal question thus presented and in doing so, is clearly of the opinion that the receipt of the testimony of Grimes, Pittman and Collins was erroneous.

The pendency of an application for a suspended sentence did not warrant the receipt in evidence of isolated specific acts of misconduct upon the part of the accused which had not been merged into the prosecution of any kind, the procedure authorized under such circumstances being to prove the general reputation of the accused or to prove that he had been convicted of a felony in this or some other state. Neither did the fact that the appellant was a witness in his own behalf warrant the introduction of specific incidents of collateral misconduct in any way connected with the offense on trial for the purpose of impeachment. See Johnson v. State, 241 S. W. Rep. 484, and cases there cited.

In Bill No. 4, it appears that there was evidence received upon the trial over appropriate objections made by the appellant that since the homicide the father of the appellant had died and executed a will and devised to the appellant all of the property of his father. The contents of the will was proved by verbal testimony, and in addition to the objection that the testimony was irrelevant and pertinent to no legitimate issue involved in the trial, it was urged that it was also incompetent in that it was secondary evidence, the will being available. We confess our inability to perceive the relevancy of the fact that the father had delivered his property to his son, the appellant. It was not an act of the appellant but of

his father that was thus proved. There is no suggestion that the act of the father had any connection with the offense on trial or was proved to be any conduct on the part of the appellant. It simply reflects the sanction of the court to the receipt in evidence of a' fact having no legitimate bearing upon the case which might be made use of by the jury to the prejudice of the accused.

In·another bill of exceptions, it is shown that the general reputation of the deceased as a law-abiding citizen having been put in issue by the State, that the appellant sought to show that he bore the reputation of a boot-legger and violator of the laws forbidding the traffic of intoxicating liquor. In view of the issues in the case, this evidence, we think, should have been received. There being a quantity of other evidence tending to show circumstantially and otherwise that the deceased was regarded by the appellant as a violator of the law mentioned, and that appellant had been informed by various parties of this fact directly, we think the exclusion of the testimony mentioned was not of a nature warranting a reversal.

The bill complaining of the testimony given by the witness, Mrs. Ernest Pope, that the deceased, on the day of the homicide, went to town for the purpose of getting medicine for his grandmother, was not properly received in evidence as it offended against the rule excluding, in homicide cases involving the issue of self-defense, evidence of the disclosed motive of the deceased. According to the theory of the appellant, the conduct of the deceased, the words to the appellant and those to the witness, Pipes, pointed to the deceased being in search of the appellant. There is no suggestion that the appellant knew that the deceased had gone to town for any other purpose.

The arguments complained of will probably not be the same upon another trial. They will not be discussed in detail. Suffice it to say that, in our judgment, they do not show error.

We are likewise of the opinion that the requested charge to the effect that the father of the appellant had a right to call upon him for assistance in recovering his place was properly refused. It singled out an isolated fact in the case.

In the motion for new trial, appellant sets up the alleged fact that the verdict was reached by lot. The evidence upon the subject, we think, is conflicting to a degree which renders the decision of the trial judge against this contention binding upon this court.

Because of the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*