SAM WATSON v. THE STATE.

No. 19578.   Delivered December 7, 1938.

The opinion states the case.

*Guinn & Guinn,* of Rusk, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for selling intoxicating liquor in Cherokee County, Texas, which county was by proper averments alleged to be dry territory, punishment assessed being a fine of $125.00.

Appellant contends that the evidence does not support the conviction because it fails to show that the order of the commissioners' court of Cherokee County, Texas, declaring the result of the local option election had been published for four consecutive weeks *subsequent* to the time the commissioners' court declared the result of the election.

The commissioners' court directed that a local option election be held in Cherokee County on the 4th day of June, 1904, to determine whether the sale of intoxicating liquor should be permitted in said county. The election was held as directed. On the 16th day of June, 1904, the commissioners' court canvassed the returns of said election and declared that prohibi-

tion had been adopted and prohibited the sale of intoxicating liquor in Cherokee County.

The law in effect at the time said election was held—Article 3391, R. S. (1895)—provided: "The order of court declaring the result and prohibiting the sale of such liquors shall be published for four successive weeks in some newspaper published in the county wherein such election has been held, which newspaper shall be selected by the county judge for that purpose. * * * And entry thus made, or a copy thereof certified under the hand and seal of the clerk of the county court shall be held sufficient prima facie evidence of such fact of publication."

Article 3396 R. S. (1895) provided that when any such election had been held, and had resulted in favor of prohibition, and the court had declared the result and made the order of prohibition, and had "caused the same to be published as aforesaid, *any person who shall thereafter*" violate any of the provisions of the law should be punished.

It has been the consistent holding of this Court that "local option" when adopted does not become operative until the order of the commissioners' court declaring the result of the election has been published for four successive weeks, and that the sale of intoxicating liquor in the territory affected is not, prior to such publication, a violation of the local option law. Jones v. State, 38 Texas Crim. Rep. 533, 43 S. W. 981; Strickland v. State, 47 S. W. 720; Phillips v. State, 23 Texas Crim. App. 304; Chenowith v. State, 50 Texas Crim. Rep. 238, 96 S. W. 19; Rhodes v. State, 75 Texas Crim. Rep. 659, 172 S. W. 252. We quote from the opinion in Chenowith's case:

"Unless this [the publication of the order] has been done, the statute has not been complied with, and the law has not been put into operation. It has been the universal holding of this Court in regard to the local option law that all the statutory provisions precedent to putting the law into operation must be complied with, and unless this has been done the law will not be operative. * * * By the terms of Article 3391 the law has imposed the duty upon the county judge to designate the newspaper and have the order declaring the result published in said newspaper for four consecutive weeks. It is a duty that the law imposes upon him, and with which the commissioners' court seems to have no concern. Drechsel v. State, 35 Texas Crim. Rep. 577, 34 S. W. 932. Then the conclusion seems to be irresistible that, as a prerequisite to the certificate of the judge, the publication must occur for the four successive weeks, or, in the

absence of paper, the posting of proper notices for that length of time. If this conclusion is correct, of which we have no doubt, then this publication for the four successive weeks is a prerequisite antecedent condition to the law going into effect."

We have stated the law controlling in order to make apparent the defect upon which appellant relies. The only proof that the order declaring the result of the election was published consisted of the certificate of the county judge which was entered on the minutes of the commissioners' court. It is not necessary to copy the certificate in full. It recites that the said court ordered the holding of the election on the 4th of June, 1904, that the election was so held, that on the 16th day of June, 1904, the said court canvassed the returns of said election, which resulted in prohibition, and declared such to be the result; the certificate then proceeded as follows: "I further certify that such order declaring the result of said election and prohibiting the sale of intoxicating liquors in said county was by me caused to be published in the 'Weekly Journal,' a weekly newspaper published in Cherokee County, Texas, said publication beginning on the 13th day of May, A. D., 1904, and continuing for four successive weeks thereafter."

It goes without saying that no result of an election could be declared or published until after the election had been held, and yet the certificate declares that the four publications of the result occurred before the date of the election. It may be that the date upon which the election was to be held had been advertised and published at the times shown in said certificate, and that the then county judge confused said dates with the publication of the order declaring the result of the election. This, however, is speculative, and no issue was made on proper notice as to holding the election. Certain it is, however, that the record before us fails to show any publication of the result of said election after said election was held, and the result thereof declared.

We are not unmindful of Article 3397, R. C. S. (1895), which reads as follows: "At any time within thirty days after the result of the election has been declared, any qualified voter of the county, justice's precinct or subdivision of such county, or in any town or city of such county in which such election has been held, may contest the said election in any court of competent jurisdiction, in such manner as has been or may hereafter be prescribed; and should it appear from the evidence that the election was illegally or fraudulently conducted; or that by the action or want of action on the part of the officers to whom was

entrusted the control of such election, such a number of legal voters were denied the privilege of voting as had they been allowed to vote might have materially changed the result; or if it appears from the evidence that such irregularities existed as to render the true result of the election impossible to be arrived at, or very doubtful of ascertaining, the court shall adjudge such election to be void, and shall order the proper officer to order another election to be held, and shall cause a certified copy of such judgment and order of the court to be delivered to such officer upon whom is devolved by law the duty of ordering such election."

We have examined with care the many cases decided by this Court upon the limitation of the time in which local option elections may be contested. The effect of such decisions may be fairly stated, we think, as follows: If the orders of the commissioners' court and the publication of the result of the election are such as to show "prima facie" that local option has been adopted no contest may be made after the time fixed by statute seeking to overturn the prima facie result as shown by the orders.

We quote from an opinion by Judge RAMSEY in Bills v. State, 55 Texas Crim. Rep. 541, 117 S. W. 835, as follows: " * * * under the provisions of the law enacted by the last Legislature, contests of local option elections must be timely had, and in the absence of such contest their regularity would be presumed, the court should, nevertheless, in every case require the introduction of formal orders of the commissioners' court * * * putting local option into effect."

We also quote from Roberts v. State, 144 S. W. 940, (opinion by Judge DAVIDSON) as follows: "Under the statute, before the local option law can be put into effect, it must be favorable to prohibition, and the evidence before the court must show that fact. The order declaring the result of the election must set out whether it was favorable or unfavorable, and the publication of the fact must also show whether favorable or unfavorable. * * * If the certificate of the county judge certifying the publication was in the record, and that certificate was to the effect that the law had carried and had been *duly published,* it would have been prima facie evidence of the fact that all requisite steps had been taken to place the law in force."

We construe the words "duly published" to mean published as the law contemplates after the result of the election had been declared. In the present case the certificate of the county

judge instead of reciting proper publication of the result of the election recites affirmatively exactly the contrary, viz.: that the publications were made before the election was held. In other words, the State itself proved that the local option law never became operative in Cherokee County. It is not a case where the State was objecting to a belated effort on the part of appellant to contest the local option election, but a case where the State itself proved a fact which rendered the law inoperative. Instead of showing a prima facie case of prohibition being in effect by the certificate of publication, the State defeated its own case by destroying any such presumption by the very certificate itself.

Notwithstanding the lapse of many years since the election in question, and the apparent acceptance of the status of prohibition in Cherokee County, and our hesitation to overturn the accepted order of things, we have been unable to discover any escape from holding that under the evidence in the present record the State failed to prove such a publication of the result of the election in question as put local option in operation in Cherokee County.

The judgment is reversed and the cause remanded.