ROBINSON v. TURRENTINE et al.

(Circuit Court, E. D. North Carolina.    January 9, 1894.)

No. 37.

NATIONAL BANKS—ASSESSMENT OF STOCK — LIABILITY OF MARRIED WOMEN.
    Code N. C. § 1826, provides that no woman during coverture shall be capable of making any contract to affect her real and personal estate without the written consent of her husband. Held, that a purchase of stock by a married woman is not a "contract" within the terms of the statute, and that the wife is liable upon an assessment although the stock was purchased without the written consent of her husband.

At Law.    Action by W. S. O'B. Robinson, receiver of the First National Bank of Wilmington, N. C., against M. B. Turrentine and

her husband, John R. Turrentine, to recover an assessment on certain shares of bank stock held by her. Judgment for plaintiff.

Daniel L. Russell, for plaintiff.

John D. Bellamy, Jr., and Herbert McClammey, for defendants.

SEYMOUR, District Judge. This is an action at law brought by Robinson, receiver of the First National Bank of Wilmington, N. C., to recover an assessment of 100 per cent. which the comptroller of the currency has duly made on the shareholders of the bank. The feme defendant was, it is alleged, at the time of its suspension, a shareholder of the stock of the bank to the amount of 20 shares of the par value of $100. M. B. Turrentine is a married woman. After her marriage and after the passage of the act of 1871 of North Carolina, (Code, § 1826,) the stock in question "was transferred to and acquired by her," to use the language of her answer. Her husband, the other defendant, never gave his written consent to the purchase. Mrs. Turrentine is not a "free trader," under Code, §§ 1828, 1831, 1832.

So, we have the case of a married woman, a citizen of North Carolina, who, without the written consent of her husband, acquired stock in a national bank, and held the same at the time that, upon its insolvency, it passed into the hands of a receiver; of an assessment upon stock of the bank by the comptroller, and a suit on such assessment; and of a defense contending that under the laws of North Carolina a married woman who has acquired national bank stock without the written consent of her husband is not liable for an assessment on such stock. If the feme defendant was the owner of the stock, she is liable for the assessment. Section 5151, Rev. St., imposing individual responsibility, to the amount of the par value of their shares, upon all stockholders in national banks, makes no exceptions in favor of married women. Keyser v. Hitz, 133 U. S. 138, 10 Sup. Ct. 290. Persons holding stock as executors, administrators, guardians, or trustees are not personally so liable, (Rev. St. § 5152,) but the estates and funds in their hands are. By the banking laws of the United States all the shares in the stock of national banks are liable to an assessment like the one levied on the stock of plaintiff's bank. To hold that a state law, were there such a law, could except certain shares from the liability, would enable states to defeat the policy of the federal government in establishing the national banking system. That the congress has power to establish and legislate for such banks has not, since 1819, been an open question. McCulloch v. Maryland, 4 Wheat. 316. If a purchase of stocks in a national bank by a married woman without the written consent of her husband gives her the ownership of such stock, judgment must be given against the feme defendant. If she owned the stock at the failure of the bank, she is liable to the assessment; if she did not, she is not liable. While the federal government exclusively controls the question of the liabilities of stockholders in national banks, it is not doubted but that a state has power to say that for reasons seeming good to its legislature, and not in conflict with or-

ganic law, a particular class of persons shall not be permitted to own particular classes of property. It may lawfully be provided that a guardian or other trustee may not invest in securities other than those specified by statute. Probably it might be held that a statute might constitutionally provide that purchases by guardians, of, say, railroad stock, in the name of their trust, should be absolutely void. In such case it might be held that an attempted transfer of such stock so purchased passed no title; that the stock still remained, although duly assigned and transferred, on the corporation books, the property of the vendor; and that the guardian could recover the money paid from the vendor. It would, I think, require strong and plain words to induce courts to give such a construction to an act of the legislature.

If Mrs. Turrentine's purchase of the 20 shares in the stock of the First National Bank of Wilmington did not pass the title in it to her, various inconveniences ensue. All persons dealing with her are presumed to know the law. Payments of dividends to her before the failure of the bank were not good payments. A person advancing money to her on a hypothecation of the stock for her necessary expenses would lose his security. A purchaser of the stock from her would acquire no title. But it is needless to elaborate the many complications that would ensue from such a state of uncertain ownership of bank stock standing in the name of married women. I will only add one. Upon such a supposition the 20 shares of the feme defendant still belong to the person who perhaps 20 years ago transferred them to her, and he is still liable to the assessment.

Does the legislation of North Carolina bear such a construction? It certainly is nowhere enacted, directly, that a married woman shall not own stock in national banks, or stock that, upon the failure of the corporation, shall be liable to assessment. In fact, there is no statute that requires the assent of a husband to any purchase of property by a wife. The constitution of North Carolina, in article 10, § 6, reads as follows:

"The real and personal property of any female in this state acquired before marriage, and all property real and personal to which she may after marriage become in any manner entitled, shall be and remain the sole and separate estate and property of such female, and shall not be liable for any debts, obligations or engagements of her husband, and may be devised and bequeathed, and with the written assent of her husband conveyed by her as if she were unmarried."

The written assent of the husband is thus required to validate a married woman's conveyance of land. This assent may be signified simply by joining in the deed. Farthing v. Shields, 106 N. C. 289, 10 S. E. 998. But no consent of her husband is required for the conveyance of real estate to her. The act of 1871 (1 Code, § 1826) reads thus:

"No woman during her coverture shall be capable of making any contract to affect her real or personal estate except for her necessary personal expenses, or for the support of the family, or such as may be necessary in order to pay her debts existing before marriage, without the written consent of her husband, unless she be a free trader as hereinafter allowed."

These two provisions are the only ones material to the matter in controversy that have been presented to the court. Section 1826 does not, in terms, require the assent of the husband to an assignment to the wife of personalty, any more than does the constitution require his assent to a conveyance to her of real estate. But it is contended that the sale of bank stock to the defendant was itself a contract, and that it is such a contract as must necessarily affect both her real and personal estate, because, in the event of the failure of the bank, her separate estate may be taken by reason of the statutory assessment to which the holders of bank stock are liable. It seems to me that this contention fails to note the distinction between a contract and the remote consequences of a contract. The defendant, by her purchase of bank stock, did not become liable to the assessment which is the subject-matter of this action. More than 10 years after that purchase, a series of events culminating in the insolvency of the bank, and the appointment of a receiver of its property, occurred. These events rendered it possible for the assessment by the comptroller of the currency to be made. At the time of the contract of the sale of the stock, she in no proper sense by it "affected her real or personal estate." It was or may be affected by the operation of subsequent events. Nor does the liability under the assessment come within the words of section 1826. "No woman," etc., says the statute, shall be capable of making "any contract to affect," etc. The contract by which the stock was purchased was a simple contract of sale. Its only purpose was to transfer the title of the stock from vendor to vendee. It affected simply that stock, which was not at the time of the sale, a part of the personal estate of the defendant, but became so by reason of the sale. The contract to affect a married woman's real or personal property, intended by the statute, is a contract charging such property with a debt or liability specifically ascertained at the time that it is entered into.

A still more conclusive reason against defendant's contention arises from the construction which the supreme court of North Carolina has placed upon the statute in Farthing v. Shields, supra. It is well settled, says Shepherd, J., in that case, that "a feme covert is at law incapable of making any executory contract whatever;" and the learned judge (now chief justice of North Carolina) gives the meaning of the statute in these words: "No woman, during her coverture, shall be capable of making any engagements in the nature of an executory contract, by which her statutory real or personal estate is to be charged in equity, without the written consent of her husband," with the exceptions mentioned in the statute. It can hardly be contended that the purchase by Mrs. Turrentine of the stock in question was an engagement in the nature of an executory contract, by which her statutory estate was charged in equity. I am, then, of the opinion that there is nothing in the state constitution or laws by which a feme covert is prohibited either from owning bank stock or from purchasing it without the written consent of her husband.

The objection does not seem to be taken by the answer that this suit will not lie at law; nor do I know that there would be anything in the objection. As a married woman is incapable at common law of making any contract, of course she could not, in the absence of a statute, be sued on a contract. In North Carolina, however, a woman may be sued at law. It is so decided in sevaral cases. Smaw v. Cohen, 95 N. C. 85; Vick v. Pope, 81 N. C. 22; Neville v. Pope, 95 N. C. 346; Burnett v. Nicholson, 86 N. C. 99. If as the court concludes the feme defendant is liable, she is so, not by reason of any charge upon her separate estate, but because of the United States statute creating the liability. There is no equitable ground of action, for there is no equitable charge to be enforced. The liability is a legal one. I know of no reason why it should not be enforced by an ordinary action. Keyser v. Hitz, 133 U. S. 138, 10 Sup. Ct. 290, was, like this, an action at law to collect from a married woman an assessment on her national bank stock, and was sustained. The earlier case of Bundy v. Cocke, 128 U. S. 185, 9 Sup. Ct. 242, was a bill in equity, and was also sustained, on the ground, however, that the prayer of the bill of revivor asks for relief out of the assets of the defendant's deceased wife, the feme owner of stock being dead. In The Reciprocity Bank, 22 N. Y. 9, 15, which involved the liability of a married woman as shareholder in a state bank, Comstock, C. J., said:

"It is also said that femes covert are not liable to suit or judgment at common law, and in general that is true. It is true, also, that the apportionment of liability among stockholders, when duly confirmed, becomes a judgment against each stockholder, to be enforced by execution. But it was competent for the legislature to depart from the rules and analogies of the common law, and to make married women and their estates liable, as other shareholders in banks are liable. This, we think, has been done."

On the whole I see no reason why, the liability existing, it should not be enforced by an action at law.

Another objection to holding that an action at law cannot be maintained to enforce a married woman's liability to the statutory assessment is that to do so would interfere with the national banking system. What the receiver is entitled to under the legislation is an absolute judgment, which may affect all the married woman's property, and which shall bind her personally,—not a decree giving a lien on perhaps only a part of it. She stands in the position of any other stockholder under the federal law, and the remedy against her must be the same as against any other owner of such stock. I have elaborated the position that under the state law a married woman is liable to the assessment, perhaps unnecessarily. I think that the federal law conclusively controls the decision. I will note, however, one more point under the former head.

The liability of a married woman for an assessment upon national bank stock, while it in no wise grows out of contract, is one of a class of liabilities which may be enforced in an action in form ex contractu; and this fact is one which has often, in analogous cases, caused confusion in minds accustomed only to the ideas of the common law. The liability of an infant or an insane person for necessaries has often been called a liability arising ex contractu, solely

by reason of the form of the action to enforce it. So of a suit for a statutory penalty. An action against a married woman, who happened to own a mill site and tract of land, obligated to keep up a bridge over the runway of a mill stream at a public road crossing, would be in form ex contractu. I do not suppose the position would be taken that under the act of 1871 the married woman could own the land without being liable both to the obligation and its enforcement, or that the act in question has the effect to prevent her acquisition of the mill property without the written consent of her husband. Obligations of this class are called by the civilians "quasi contracts," or, to use the more proper vocabulary of our own law, they arise from "constructive contracts," which Sir Henry Maine distinguishes from "implied contracts" in his Ancient Law. Page 373. He says:

"It has been usual for English critics to identify quasi contracts with implied contracts; but this is an error, for implied contracts are true contracts, which quasi contracts are not. In implied contracts, acts and circumstances are the symbols of the same ingredients which are symbolized in express contracts by words; and whether a man employs one set of symbols or the other must be a matter of indifference, as far as concerns the theory of agreement. But a quasi contract is not a contract at all."

This distinction between "contract" and "constructive contract" is very well elaborated in an article by Mr. Keener in the May (1893) number of the Harvard Law Review. Inattention to it has caused the difficulty sometimes felt in discussing the liabilities of infants and lunatics, and particularly of reconciling the proposition, universally admitted, that a lunatic cannot contract, with his liability to an action on a contract.

The liability of the defendant in this action is quasi contractual; is treated, for certain purposes growing out of the limitations of ancient forms of action, as contractual; but it does not arise from a contract, and is not affected by the act of 1871-72, supra. No state statute prohibited Mrs. Turrentine from being the owner of the bank stock in question as being a married woman. Could such a statute be found, it would perhaps conflict with the rights given married women by the state constitution, (article 10, § 6.) No law of the state, as I construe the state statutes, exempts married women from this assessment. If it did, such law would violate the organic law of the United States, unless it at the same time forbade her ownership of the stock. No objection is taken to the form of the suit, nor do I see that such objection, if taken, could be sustained.

Judgment for plaintiff.