MRS. ADA L. HARRIS ET VIR V. W. D. PRINCE, RECEIVER OF LLOYDS OF TEXAS.

No. 7220. Decided December 7, 1938.
Rehearing overruled January 11, 1939.
(121 S. W., 2d Series, 983.)

232

*J. R. Creighton* and *Ritchie & Ritchie,* all of Mineral Wells, for plaintiff in error.

The act under which the attempted transfer of stock certificates were made, being void, would not operate as an estoppel against a married woman to recover building and loan stock, her separate property, which she had attempted to transfer to Lloyds Exchange, without the joinder of her husband. Eastland County v. Ford, 23 S. W. (2d) 848; Buvens v. Brown, 118 Texas 551, 18 S. W. (2d) 1057; Harrison Oil Co. v. Sherman, 66 S. W. (2d) 701; Daniel v. Mason, 90 Texas 240, 38 S. W. 161.

*Hamilton, Lipscomb & Wood, Worsham, Burford, Ryburn & Hincks* and *Logan Ford,* all of Dallas, for defendant in error.

Mrs. Harris, having transferred her shares of stock to the guaranty fund of the Lloyds of Texas in discharge of her subscription agreement for the purpose of creating a surplus or reserve is estopped, as against creditors of the exchange, to assert any private agreement that said stock was merely transferred as collateral to secure a part of her subscription. Shaw v. Borchers, 46 S. W. (2d) 967; Reeves v. Powell, 267 S. W. 328; Camden Fire Ins. Ass'n. v. Clayton & Co., 117 Texas 414, 6 S. W. (2d) 1029.

*William H. Flippen,* and *Dan T. Johnston,* both of Dallas, filed briefs as amicus curiae.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

On February 14, 1929, Mrs. Ada L. Harris, a married woman, for the purpose of engaging "in the business of individual underwriting upon policies and contracts of insurance," signed Articles of Association of what was known as "Lloyds of Texas." She at the same time signed power of attorney, in which she constituted Thomas Investment Company, a corporation, her attorney-in-fact, with all necessary powers to act for her, with many others, in writing contracts of insur-

ance under the Lloyd's Plan, as then provided for by Chapter 19 of Title 78 of the Revised Statutes of 1925. In the signing of these instruments she was not joined by her husband.

The Articles of Association referred to, among other things, contained the following:

"Sixth. Each subscriber, upon the signing of these Articles of Association and upon the execution of the power-of-attorney herein provided for, and as a condition precedent to becoming a subscriber to said association, shall contribute in cash, bonds, stocks or other securities, to be approved by the Attorney-in-fact, to the surplus of said association, a sum not less than 15% in cash and 25% in securities of the amount of his total subscription to surplus, which subscription to surplus shall be evidenced by a non-negotiable subscription note signed by the subscriber and delivered to the Attorney-in-Fact * * *."

Mrs. Harris made a subscription of $1000.00 to the surplus of this Association. In accordance with the above provision of the agreement, she paid in cash the sum of $150. She executed and delivered to the attorney-in-fact a non-negotiable note in the sum of $600. As representing the remaining 25 per cent (that is $250), she endorsed, without the joinder of her husband, a certificate of paid-up shares in the Mineral Wells Building & Loan Association of the par value of $1000.00, and delivered same to the attorney-in-fact.

The Articles of Association further provided as follows:

"The intention being that the funds so contributed by the subscriber shall constitute a surplus or reserve fund for the payment of losses, provided always, that no subscriber shall be liable for the payment of losses beyond the total of the amount he may have to his credit at any one time, plus his total unpaid subscription to surplus; it being expressly agreed and hereby declared that it is not the purpose of the subscribers to form or to assume the powers of a partnership, limited or otherwise, a joint stock company, a corporation or a quasi-corporation, and that there shall be no joint funds or capital stock, and that no joint rights or obligations shall be claimed or created. In every policy issued under the arrangement herein contemplated, all of the parties hereto, being the subscribers, shall become insurers, and every subscriber shall be and become severally liable under each and every policy so issued in the proportion which his subscription to surplus at the time of the issuance of such policy shall bear to the total subscription to surplus of all subscribers at that time. No

subscriber shall be committed on any single risk by the Attorney-in-Fact to any amount in excess of 10% of his subscription to surplus, unless such excess is protected by re-insurance."

The attorney-in-fact named in the Articles of Association signed by Mrs. Harris and numerous others obtained a license from the Commissioner of Insurance, as provided by Article 5016 of the Revised Statutes of 1925, and under the name of "Lloyds of Texas" proceeded to write insurance in behalf of said "underwriters." In due time, said Lloyds of Texas became insolvent, and in a suit brought by the Attorney General was dissolved and a receiver appointed. See Lloyds of Texas et al v. Bobbitt, 40 S. W. (2d) 897, and 55 S. W. (2d) 803.

The present suit was instituted in the receivership proceeding, by W. D. Prince, the receiver, against Mrs. Ada L. Harris and her husband. The purpose of the suit was to divest Mrs. Harris of all title to the shares of stock in the Mineral Wells Building & Loan Association, and to have said stock declared part of the surplus funds of said Lloyds of Texas, to be used in satisfying the claims of creditors of said concern. Mrs. Harris defended upon several grounds; the principal one being that no title to said stock ever passed to the attorney-in-fact, or said Lloyds of Texas, as a part of the surplus, because the attempted transfer of same was void, the assignment not having been joined in by her husband, as provided by Article 4614 of the Revised Statutes of 1925; and because no valid obligation was created as against her by the transaction in question. Judgment was rendered in the district court against Mrs. Harris, divesting her of all title to said stock, and ordering same sold by the receiver for the purpose of assisting in liquidating the obligations of the defunct association. This judgment was affirmed by the Court of Civil Appeals. 98 S. W. (2d) 1022.

■ The briefs and arguments have taken a wide range, but we have concluded that the case is to be disposed of by approach from a single angle. The liability of Mrs. Harris, if any, came into existence solely by reason of signing the Articles of Association, which prescribed the extent of her liability and the conditions under which it should arise. The deposit of the stock with the attorney-in-fact was merely an incident to the contract. Such deposit was solely in the nature of a security or guaranty of the personal liability assumed by her under the terms of the agreement, considered in light of the pertinent statutes.

It is elementary that a married woman can contract only

in the manner and under the conditions prescribed by law; save, of course, in certain instances not applicable here. Lee v. Hall Music Company, 119 Texas 547, 35 S. W. (2d) 685; Hirschfeld & Company v. Evans, 127 Texas 254, 93 S. W. (2d) 148; 23 Texas Jur., pp. 199-200. There is no provision of law which permits a married woman to execute contracts of insurance and thereby bind herself or her separate estate, unless it be said that under Article 4626 she might be authorized to engage in writing insurance. There is no claim that said article was complied with in this instance.

■ It appears, therefore, that the purported contract created no enforceable liability as to Mrs. Harris when contested by her. The assignment of the stock created no liability aside from the contract. In the last analysis, the stock was assigned merely to guarantee such liability against Mrs. Harris as might come into existence by reason of the Articles of Association and the contemporaneous power of attorney. This being true, the question of whether or not the stock was validly assigned under Article 4614, becomes immaterial. This also makes it unnecessary to discuss all other questions, except the question of estoppel.

■ It is contended by the receiver that Mrs. Harris became a stockholder in said Lloyds of Texas; that she assigned to same the stock in question as a part of its assets; that, although she had a right to withdraw from the association at any time, she nevertheless allowed the Association to hold her out as a stockholder, and to retain possession of the stock as a guaranty of liability; that policyholders were thereby induced to deal with the Association upon the credit of Mrs. Harris, and upon the belief that the stock had been validly assigned. It is claimed that this created an estoppel.

■ Properly speaking, Mrs. Harris was not a stockholder. She was an individual underwriter. The statute and the Articles of Association clearly declare that the individuals themselves, known as underwriters, are "authorized to make insurance," and they merely pool their individual liability for convenience in making contracts. By Article 5021 it is provided that, although suit may be brought against the Association and service may be had upon the attorney-in-fact, nevertheless "a judgment in any such action against the attorney or against any of the underwriters shall be binding upon and be a judgment against each and all of the underwriters as their several liabilities may appear in the contract of insurance in which the action is brought." The use of the word "Lloyds" (see Article

5015) was sufficient to advise the public that policies of insurance were being issued under the Lloyd's Plan, which merely contemplated individual liability of the several underwriters; and thus the public was put upon inquiry, both as to the financial responsibility of each underwriter, and of the authority of each to engage in such an enterprise. Under these circumstances, there could be no estoppel as to Mrs. Harris.

The judgments of the Court of Civil Appeals and of the district court are reversed, and judgment is here rendered that defendant in error take nothing; and the district court is instructed to deliver to the plaintiff in error, Mrs. Ada L. Harris, the shares of stock in question.

Opinion adopted by the Supreme Court December 7, 1938.

Rehearing overruled January 11, 1939.