MRS. MAY PEARL FLINT, JOINED PRO FORMA BY HER HUSBAND, C. W. FLINT, JR. V. A. B. CULBERTSON, RECEIVER FOR FRATERNAL BANK & TRUST COMPANY.

No. A-6749. Decided June 25, 1958.
Rehearing overruled December 10, 1958.
(319 S.W. 2d Series 690)

*Tuchlin & Mehl, Milton J. Mehl* and *Stanley Freed,* all of Ft. Worth, for Petitioners.

*Ernest May,* of Ft. Worth, for respondent.

MR. JUSTICE CULVER delivered the opinion of the Court.

The Fraternal Bank & Trust Company was organized in 1911 as an unincorporated joint stock association and continued to carry on a banking business until 1957, when in a depositors' class suit it was adjudged insolvent. The receiver thereafter, in accord with Article 6137, Vernon's Annotated Civil Statutes, obtained service on some or all of the members or shareholders individually. The trial court declared these members so served to be liable as partners to the creditors of the insolvent bank. The petitioner, May Pearl Flint, appealed urging coverture as a defense, her disabilities in this respect not having been removed. The Court of Civil Appeals held that she was bound, nevertheless, and affirmed. 309 S.W. 2d 269. We are of the opinion that the plea of coverture is good and operates to relieve the petitioner of personal liability.

The petitioner owns 102 shares inherited from her husband who died on July 4, 1950. Four months later she married her present husband. The certificates of ownership were not actually delivered to her and placed in her name until after her remarriage. She did receive one hundred or so dollars as dividends over the years, but none while she was a widow. After her remarriage she was elected and served as a director. The respondent, as we understand, does not rely on any theory of estoppel for holding petitioner liable nor is the trial court's judgment so predicated. Respondent say that, "the simple issue is whether Mrs. Flint's coverture relieves her of the liability usually incidental to membership of an unincorporated company."

█ In this state the authorities are uniform that a married woman cannot become a partner, at least in the ordinary partnership venture, and the marriage of a single woman will dissolve a partnership theretofore existing with another, even

though the parties attempt to carry on the partnership business. Wallace v. Finberg, 46 Texas 35; Brown & Company v. Chancellor, 61 Texas 437; Purdom v. Boyd, 82 Texas 130, 17 S.W. 606; Dillard v. Smith, 146 Texas 227, 205 S.W. 2d 366; Jung v. Dallas Tailor & Laundry Supply Co., 256 S.W. 2d 703 (Texas Civ. App., no writ history); King v. Matney, 259 S.W. 2d 606 (Texas Civ. App., writ refused n.r.e.).

■ The Court of Civil Appeals held, however, and the respondent contends here, that this rule is not applicable principally because of the all-inclusive force of Article 6137, Vernon's Annotated Civil Statutes, as follows:

"In a suit against such company or association, in addition to service on the president, secretary, treasurer or general agent of such companies or association, service of citation may also be had on any and all of the stockholders or members of such companies or associations; and, in the event judgment shall be against such unincorporated company or association, it shall be equally binding upon the individual property of the stockholders or members so served, and executions may issue against the property of the individual stockholders or members, as well as against the joint property; but executions shall not issue against the joint individual property of the stockholders or members until execution against the joint property has been returned without satisfaction."

Respondent's position is that the phrase "any and all of the stockholders or members of such companies or associations" means exactly what it says and encompasses married women as well as all others. If this contention is sound it must also include minors who inherit or otherwise come into ownership of certificates of interest and make them and their estates personally liable. And this in spite of the general rule that, absent fraud or other elements of estoppel, a minor is not to be held liable on his contracts against the plea of minority. We agree with the pronouncement in the early case of DeLeon v. Owen, 3 Texas 153, that the courts are not to engraft exceptions upon a statute when the lawmaking power has not done so. But we are equally of the opinion that it is not within the scope of the court's authority to broaden a statute by implication, or interpret it as affecting matters that were clearly not within the intention of the lawmaking body. That the Legislature, when it used the term "any and all of the stockholders or members" meant those persons that would in the normal course of business dealings be liable and did not intend to create new obligations or addi-

tional classes of obligees is shown by the remainder of the Act, Article 6138, setting out that the provisions of the chapter should be construed as cumulative merely of other remedies then existing under the law. We think the statute was correctly evaluated in Mayhew & Isbell Lumber Co. v. Valley Wells Truck Growers' Ass'n., 216 S.W. 225, 229, as follows:

"* * * The statute which permits an unincorporated association to sue or be sued in its association name merely furnishes a convenient method of conducting suits, without undertaking to change the legal status of the association or in any way affect the law in so far as it relates to contracts. * * *."

Respondent supports his construction and application of the statute by Spears v. City of San Antonio, 110 Texas 618, 223 S.W. 166, 169. In that case the Court held that the plea of coverture did not exclude a married woman from the operation of an act imposing personal liability upon the owner of exempt real estate for paving assessments, but the Court carefully pointed out:

"* * * The latter (the act adopted by city charter) imposed a charge regardless of any contractual power or contractual obligation on the part of the owner whose property was enhanced by a necessary public improvement. In order to be enforceable, the charge had to be validly imposed regardless of the assent or consent of the owner. * * *."

Under this holding, no doubt, such a charge could be validly assessed and collected from the estate of a minor or an insane person. The imposition of the liability follows ownership on the theory that the value of the property has been enhanced by the paving improvement. On the other hand liability as a partner flows from a contractual obligation. Speer's Law of Marital Rights, 3rd Ed., Sections 291-292.

More to the point, we think, is the later decision of Harris v. Prince, 132 Texas 231, 121 S.W. 2d 983. In that case a married woman had signed articles of association in "Lloyds of Texas" and had taken other steps to comply with the Lloyds Plan, Article 18.01 et seq., Insurance Code (formerly Article 5013 et seq., Vernon's Annotated Civil Statutes) as an underwriter. On insolvency of this concern, the receiver sought a personal judgment against the married woman and her husband. Judgments of the district court and Court of Civil Appeals in favor of the receiver were reversed and rendered by this Court, hold-

ing that no provision of law permits a married woman to execute contracts of insurance and bind herself and her separate estate, at least in the absence of removal of the disability of coverture.

The language of Article 18.17 of the Lloyds Plan in fixing personal liability is just as broad and comprehensive as that of Article 6137. It provides that suit on any insurance policy may be brought against the attorney for the underwriters and the underwriters or any of them and that a judgment against the attorney or any of the underwriters shall be equally binding upon "each and all of the underwriters as their several liabilities may appear." This Court did not consider, evidently, despite its broad terms, that this statute has the effect of holding a married woman liable. True enough Mrs. Harris was an underwriter and not a stockholder. But if the term "all underwriters" in the statute was not sufficient to include married women who purported to act as underwriters neither would the term "all members" in Article 6137 serve to embrace married women and subject them to personal liability. Respondent further argues that while Mrs. Harris became an underwriter by virtue of a contract, Mrs. Flint did not contract to become a shareholder of Fraternal Bank & Trust Company because she got her shares by legacy. We think the distinction is somewhat strained. The manner of acquisition is relatively unimportant. Mrs. Flint could have refused to accept the legacy, but by acceptance she impliedly contracted just as effectively as if she had purchased the certificates. Surely there would not be a difference in the liability of a married woman who purchases and a married woman who inherits, and particularly so under the contention that the statute placing liability on all shareholders includes all married women alike.

We do not regard the ruling in Chapman v. Pettus, 269 S.W. 268, 269, namely, that married women stockholders in a bank are personally liable for an assessment in the event of the bank's insolvency, as controlling in the situation before us. At that time Section 16, Article 16 of the Texas Constitution provided in substance *that each shareholder* should be personally liable for all debts of the banking corporation to the amount of the par value of the shares of stock so owned. The Court, observing that no constitutional or statutory provisions expressly fixed that liability upon married women, did not rest its decision alone upon the implication that the term "each shareholder" would as it says "overcome the ancient but still vigorous rule of strict construction in favor of married women against all enactments

affecting their personal liabilities," but rather relied upon the express provisions of Article 1306, Vernon's Annotated Civil Statutes (1123 R.S.) to the effect that charters of all corporations may be subscribed by married women; that they may be stockholders, officers and directors and that their acts, contracts and deeds as such shall be as binding and effective for all the purposes of said corporation as if they were males. The statute applying to all private corporations likewise applied to a banking corporation and it would therefore subject a married woman to liability as any other person.

In Meares v. Duncan, 123 N.C. 203, 31 S.E. 476, relied upon by respondent and cited in connection with the Chapman case, the married woman was a stockholder and an incorporator of a building & loan association, not a partnership. She was held liable for her proportionate share of the company losses as were the others similarly situated, despite her plea of coverture. This result, the Court said, was according to the principles of equity and was the equitable solution of the matter. Even so, the Court offered what it terms "a more direct solution" and one with which the plea of coverture was not concerned. The case, therefore, is of small significance as we deal here not with equitable principles, but with a rule of law. Associations such as Fraternal Bank & Trust Company have been held to be partnerships. Thompson v. Schmitt, 115 Texas 53, 274 S.W. 554; Victor Refining Co. v. City National Bank of Commerce, 115 Texas 71, 274 S.W. 561; Porter et al v. McCamey, 115 Texas 49, 274 S.W. 562; Howe v. Keystone Pipe & Supply Co., 115 Texas 158, 274 S.W. 563, 278 S.W. 17.

It is quite true that a joint stock company is distinguishable from the ordinary commercial partnership in many respects. Its management, control, term, existence and method of operation depend upon the articles of association adopted. The death of a member does not dissolve the association and ordinarily the shares owned by the members may be transferred at will, though the articles of association in Fraternal Bank & Trust Company provided that the might be transferred only upon consent of the board of directors. But all of these matters are of contractual obligation among those who associate themselves together. Of course, as respondent asserts, the ultimate holding in the cases cited immediately above is that the member is liable as a partner, but that result is based on the determination that he was a member of a partnership. In the cases holding that a married woman cannot be a member of an ordinary partner-

ship, also the ultimate result reached is that she is relieved of personal liability.

All of the text writers treat a joint stock company as a kind of partnership and deal with it under the law of partnership. In Rowley's Modern Law of Partnership, Vol. 1, Section 147, p. 144, the author quotes from a well-recognized authority saying:

"In joint stock and other large companies which are not incorporated, but are a simple, though extensive, partnership, their liabilities to third persons are generally governed by the same rules and principles which regulate commercial partnership."

It may be said that this decision is out of step with modern development and trend, and that the result is unjust to creditors and other shareholders, but it is no more so than in Harris v. Prince. The trend is and has been to remove restrictions upon married women and the so-called disabilities of coverture and to more nearly place them upon an equal footing with other citizens, but that trend has been established by legislative action, and further relief must be had in like manner.

We hold that the petitioner is not personally liable to the creditors of this defunct concern and the judgments of the District Court and Court of Civil Appeals in so far as they subject her and her separate estate to personal liability are reversed, and judgment here rendered for petitioner.

Opinion delivered June 25, 1958.

MR. JUSTICE SMITH, joined by JUSTICE NORVELL, dissenting.

I respectfully dissent. The majority proceeds upon the erroneous theory (1) that it was not the intention of the Legislature when it used the term "any and all of the stockholders or members in Article 6137" Vernon's Annotated Statutes of Texas, to broaden a statute by implication so as to render the petitioner, a married woman, liable to the creditors of the insolvent unincorporated joint stock association, and (2) upon the erroneous theory that "we deal here not with equitable principles, but with a rule of law." Under theory Number One, the majority says that a married woman cannot become a partner, at least in the ordinary partnership venture. Cases are cited wherein it has been properly held that a married woman can contract only in the manner and under the conditions prescribed by law.

The majority seems to think that the case of Harris v. Prince, 132 Texas 231, 121 S.W. 2d 983, 984, is controlling. I disagree. The purpose of that suit was to divest Mrs. Harris, a married woman, of all title to the shares of stock in the Mineral Wells Building & Loan Association. Prior to the suit, Mrs. Harris had, without the joinder of her husband, signed Articles of Association of what was known as "Lloyds of Texas." As a condition precedent to becoming a subscriber to the Association, Mrs. Harris agreed to contribute in cash, bonds, stocks, or other securities, to be approved by the attorney in fact, to the surplus of the Association, a sum not less than 15 per cent in cash and 25 per cent in securities of the amount of her total subscription to surplus. Further, in that connection, it was agreed that the subscription to surplus "shall be evidenced by a non-negotiable subscription note signed by the subscriber and delivered to the attorney in fact * * *." Pursuant to such agreement, Mrs. Harris made a subscription of $1000.00 to the surplus of the Association. She paid in cash $150.00. She executed and delivered to the attorney in fact a non-negotiable note in the sum of $600.00. As representing the remaining 25 per cent ($250.00), she endorsed, without the joinder of her husband, a certificate of paid-up shares in the Mineral Wells Building & Loan Association of the par value of $1000.00, and delivered same to the attorney in fact. All of this was done to provide a surplus or reserve fund for the payment of losses. The court held that in the light of the pertinent statutes (Article 6137, supra, was not one of them), the liability of Mrs. Harris, if any, came into existence solely by reason of signing the Articles of Association, which prescribed the extent of her liability and the conditions under which it should arise. The court went on to hold that Mrs. Harris was not a stockholder; that she was an individual underwriter. The court simply held, and correctly so, that "There is no provision of law which permits a married woman to execute contracts of insurance and thereby bind herself or her separate estate * * *." The court rejected the contention of the Receiver that Mrs. Harris bcame a stockholder in Lloyds of Texas. The court further held that she was only an individual underwriter, and that the use of the word "Lloyds" was sufficient to advise the public that policies of insurance were being issued under the Lloyds' plan, which merely contemplated individual liability of the several underwriters, and that the public was put upon inquiry, both as to the financial responsibility of each underwriter and of the authority of each to engage in such an enterprise. Clearly, the obligation of Mrs. Harris, flowed from a contractual obligation illegally created, and, therefore, her plea of coverture was properly sustained.

That case has no application in the instant case. In our case no effort is being made to enforce the contract of Mrs. Flint. This suit is being prosecuted by a Receiver in behalf of the creditors of the defunct Fraternal Bank & Trust Company. The suit is being presented against the stockholders in accordance with Article 6137 ,supra. The contractual obligations, the basis for the action against Mrs. Flint, were the result of the contracts of the joint stock company and not those of Mrs. Flint or any other stockholder. The majority admits that a joint stock company is distinguishable from the ordinary commercial partnership. As pointed out, its management, control, term, existence, and method of operation depend upon the Articles of Association adopted. All of its business is carried on by and through its Board of Directors. The joint stock company continues on as an entity and is not dissolved upon the death of one of the stockholder members of the Association. While it is true that joint stock companies are treated by some of the text writers as a type of partnership, yet, we must recognize that this alone does not determine the issue in this case. A stockholder in The Fraternal Bank & Trust Company (unincorporated) enjoys no different status, so far as suits of this character are concerned, than the stockholders of a national or state bank. The case of Witters v. Sowles, 35 Fed. 640, 641, decided by Circuit Court D, of Vermont, is directly in point, and I quote it as follows:

"This suit is brought to recover an assessment equal to the par value on 400 shares of $100 each in the First National Bank of St. Albans, of which the plaintiff is receiver, held by the *feme* defendant. The defendants have demurred to the declaration, and the cause has been heard on that demurrer. The plaintiff first brought a bill in equity against these defendants to enforce this liability. The defendants demurred to the bill on the ground that a married woman could not be holden for such an assessment; and that, if she could, the remedy in that case would be at law, and not in equity. The question of her liability was then examined, and held to exist, but the nature of it was found to be such that there was no jurisdiction in equity to enforce it, and the bill was dismissed for that reason. 32 Fed. Rep. 767. The defendants insist again, here, that this liability rests upon contract; that the contracts of married women, in Vermont, at the time when the liability accrued, if at all, were wholly void, and that therefore no liability was created. Some books and cases not referred to before have been produced now, and the subject has been re-examined. That the liability for such an assessment rests upon contract, and not upon any incurring of a penalty or tort, is true, (Richmond v. Irons, 121 U.S. 27, 7 Sup. Ct. Rep.

788;) [30 L. Ed. 864] and that married women could not at that time by their mere contracts bind themselves to the payment of money, in Vermont, is also true. But the contracts sought to be enforced are the contracts of the bank, and not those of this *feme,* or any other shareholder. Without the statute she would not be liable in this direction at all. That makes the shareholders of every national banking association responsible "for all contracts, debts, and engagements of such association to the extent of the amount of their stock therein.' Rev. St. U.S., Section 5151, [12 U.S.C.A. Section 63]. The contract is the contract of the bank; the shareholders have nothing whatever to do about making it. The law annexes their obligations by its own force; no act or capacity to act on their part is required. The declaration well sets forth that the *feme* defendant was the shareholder of these shares, and that proper proceedings were taken to fix this liability. These facts are admitted by the demurrer. The declaration, therefore, sets forth a good cause of action, if married women are included by the general words of the statute. That they are included is shown by the case of *The Reciprocity Bank,* 22 N.Y. 9; *Sayles v. Bates,* 5 Atl. Rep. 497; and *Hobart v. Johnson,* 19 Blatchf. 359, 8 Fed. Rep. 493. By taking the position of a shareholder she placed herself within reach of the statutory obligation. She could become a shareholder in various ways: by subscribing for the stock; by purchasing it; or by accepting it as a gift or bequest. The mode of acquisition would make no difference. Assent, at least, is required to becoming a stockholder in any manner; and that is sometimes referred to in connection with this liability. This reference is not, however, understood to signify that the assent or contract involved in becoming a shareholder is of any materiality beyond accomplishing that relation. No agreement to become liable, or protest against liability, would add to or take from the statutory obligation, and no contract or assent is involved beyond what is necessary to acquire the stock. Consequently no capacity would be required outside of what would be sufficient for that. This liability is an incident to holding the shares, like that to pay taxes on them. The coverture does not appear to afford any exception from either. Many cases have been referred to in argument bearing upon the manner in which married women and their property may become bound, and how they may be proceeded against; but as this case is not understood to rest upon any contract of the *feme* defendant, they do not appear to have any important part in determining the questions involved, and are not further referred to. The relation of shareholder, admitted by the demurrer, appears to carry with it the liability of the defendants. The demurrers must therefore be overruled. On motion

of the defendants, however, leave to withdraw the demurrer and replead is granted. Demurrers overruled, with leave to defendants to withdraw them and replead by August 10th next."

It is true, a married woman accepting the provisions of Article 4626, Vernon's Annotated Statutes of Texas, may thereafter be held bound and coverture would be no defense in actions on contracts executed after the removal of disability of coverture, but it is equally true that there is no law that prevents her from becoming the owner of stock either by purchase, gift, or bequest. If such a statute were enacted, in my opinion, it would be unconstitutional.

In the case of Robinson v. Turrentine et al., 59 Fed. 554, 558, this question was discussed. There the question was as in the instant case. There the court held that there being no state statute prohibiting a married woman from being the owner of the bank stock in question, and there being no law of the state exempting married women from an assessment, the married woman stockholder was liable.

In the Robinson case, supra, the court held that the purchase of stock by a married woman was not a contract within the term of the statutes of North Carolina which provided that no woman during coverture shall be capable of making any contract to effect her real or personal estate without the written consent of her husband. In that case the court said that if the feme defendant was the owner of the stock, she would be liable for the assessment under the statute imposing individual responsibility upon all stockholders alike without exceptions. In the instant case, the provisions of Article 6137 supra, render it clear that the Legislature did not exempt married women stockholders from the provisions of the Act, but to the contrary, it expressly provided that a judgment shall be equally binding upon the individual property of the stockholders. To hold otherwise would defeat the very purpose of the Legislature in permitting the organization of joint stock companies such as we have here, and would defeat the manifest intention of the Legislature, when it enacted Article 6137, supra, to protect the creditors of such joint stock companies. If the acquisition of the stock by bequest gave Mrs. Flint the ownership of such stock, then judgment should be given against her. Certainly, it was the intention of Legislature to make the stockholder liable.

In the Robinson case, supra, the court said:

"The liability of a married woman for an assessment upon national bank stock, while it in no wise grows out of contract, is one of a class of liabilities which may be enforced in an action in form ex contractu; and this fact is one which has often, in analogous cases, caused confusion in minds accustomed only to the ideas of the common law. The liability of an infant or an insane person for necessaries has often been called a liability arising ex contractu, solely by reason of the form of the action to enforce it. So of a suit for statutory penalty. An action against a married woman, who happened to own a mill site and tract of land, obligated to keep up a bridge over the runway of a mill stream at a public road crossing, would be in form ex contractu. I do not suppose the position would be taken that under the act of 1871 the married woman could own the land without being liable both to the obligation and its enforcement, or that the act in question has the effect to prevent her acquisition of the mill property without the written consent of her husband. Obligations of this class are called by the civilians 'quasi contracts,' or, to use the more proper vocabulary of our own law, they arise from 'constructive contracts,' which Sir Henry Maine distinguishes from 'implied contracts' in his Ancient Law, Page 373. He says:

" 'It has been unusual for English critics to identify quasi contracts with implied contracts; but this is an error, for implied contracts are true contracts, which quasi contracts are not. In implied contracts, acts and circumstances are the symbols of the same ingredients which are symbolized in express contracts by words; and whether a man employs one set of symbols or the other must be a matter of indifference, as far as concerns the theory of agreement. But a quasi contract is not a contract at all.'

"This distinction between 'contract' and 'constructive contract' is very well elaborated in an article by Mr. Keener in the May (1893) number of the Harvard Law Review. Inattention to it has caused the difficulty sometimes felt in discussing the liabilities of infants and lunatics, and particularly of reconciling the proposition, universally admitted, that a lunatic cannot contract, with his liability to an action on a contract.

"The liability of the defendant in this action is quasi contractual; is treated, for certain purposes growing out of the limitations of ancient forms of action, as contractual; but it does not arise from a contract, and is not affetced by the act of 1871-72, supra. No state statute prohibited Mrs. Turrentine

from being the owner of the bank stock in question as being a married woman. Could such a statute be found, it would perhaps conflict with the rights given married women by the state constitution, (article 10, Section 6). No law of the state, as I construe the state statutes, exempts married women from this assessment. If it did, such law would violate the organic law of the United States, unless it at the same time forbade her ownership of the stock. No objection is taken to the form of the suit, nor do I see that such objection, if taken, could be sustained."

In the case of In Re Reciprocity Bank, 22 N.Y. 9, the court held that a married woman was capable of becoming a stockholder, and such being true, she becomes subject to the liability by force of the statute, not by contract, when she becomes a stockholder.

It must be concluded that in the instant case there is no legal obstacle to prevent a married woman from becoming a stockholder in a joint stock company, such as we have involved here. This being true, it necessarily follows that in the absence of an exemption of married women from the force of the statute, Mrs. Flint is liable.

The question in a sense involves a question of statutory interpretation. What was the intention of the Legislature? Did it intend to create classes of stockholders? Or, rather, did the Legislature contemplate at the time it enacted Article 6137, supra, that all classes, including married women, would or could become stockholders either by purchase, gift, or bequest? Undoubtedly it knew that married women could acquire ownership of stock. With all this in mind, the Legislature adopted an all inclusive statute. That is to say, the stockholder as used in the statute is to be construed as used in its ordinary legal signification, and, therefore, it intended to describe a class of persons who occupy the status and relation of members toward the joint stock company, and of contributors toward creditors. There being no exception of married womn from this class, this Court is without authority to engraft an exception in favor of Mrs. Flint. See DeLeon v. Owen, 3 Texas 153. To do so would be unfair to the remaining stockholders. It would not amount to a uniform distribution of the liability to creditors among all the stockholders as contemplated by the statute. In my opinion, married women are included and come under this statute whenever by law, they have become such stockholders. It is immaterial how that status comes about.

At this point, I call attention to the majority opinion wherein it holds that we are not dealing here with equitable principles. With this statement I do not agree. While I stand by the principles above discussed, I think it is recognized that equity interposes in certain circumstances to prevent an advantage by one party over another. In the instant case, to permit Mrs. Flint to escape liability would be unfair and would be giving her an unconscionable advantage over not only the creditors but the other stockholders as well. Equity recognizes equitable contracts by representations and acts. It takes cognizance of special rights grounded in conscience which are not noticed at law. Pomeroy's Equity Jurisprudence (5th Ed.), Sections 1293, 1294, 1295.

In the case of Bendler v. Bendler, 3 N.J.L. 161, 69 Atl. 2d 302, 306, the Supreme Court of New Jersey announced some principles of law which were, perhaps, pure dicta in that case, but in my opinion the reasoning in the majority opinion is entirely appropriate and applicable here.

In that case it was stated:

"* * * And it is the rule that, while a married woman is incapable of binding herself personally in equity to the same extent as at law, her contracts relating to or made in view of her separate estate are so far valid and effectual as to be enforceable against her separate estate. Equity has never clothed married women with the capacity to bind themselves personally by contract. Their contracts, when void at law, are deemed in equity contracts sub modo only. The liability in such cases is not legal, but equitable only, enforceable against the wife's separate estate according to the dictates of equity and good conscience. * * * The correlative equitable rights and duties which arise out of the transaction constitute the subject of equitable cognizance. Ireland v. Ireland, 43 N.J. Eq. 311, 12 A. 184 (Ch. 1888); Garwood v. Garwood, 56 N.J. Eq., 265, 38 A. 954 (Ch. 1897). * * * The reason of the rule was thus stated by Lord Justice James in Jones v. Grissell, L.R. 12 Ch. Div. 484 (1879):

'In equity the liability is to have her separate estate taken from her for the benefit of a person with whom she had contracted on the faith of it. That was a special equitable remedy arising out of a special equitable right.' * * * And in Owens v. Dickenson, Craig & P. H. 48, 53, Lord Cottenham said that 'the separate property of a married woman being a creature of equity, it follows that, if she has a power to deal with it, she has the other power incident to property in general; namely,

the power of contracting debts to be paid out of it; and inasmuch as her creditors have not the means at law of compelling payment of those debts, *a Court of Equity takes upon itself to give effect to them, not as personal liabilities, but by laying hold of the separate property as the only means by which they can be satisfied.' See, also, Sims v. Rickets,* 35 Ind. 181, 9 Am. Rep. 679 (1871)." Emphasis added.

In Meares v. Duncan, 123 N.C. 203, 31 S.E. 476, 477, principles of equity were applied. In that case a married woman attempted to avoid statutory liability just as the petitioner has in the instant case. Demand was made of her to contribute her share of the deficiency for payment of creditors of a building and loan association. The Supreme Court of North Carolina held her liable, and, in part, said:

"As the defendant feme covert is entitled to her part of the profits if any has been made, equity says that she must bear her part of the losses as other stockholders have to do. *Were she not so liable, the whole equitable settlement of the concern would be destroyed. She got in the same boat with the other stockholders, and, as it sank, she has to take her chances of escape with the others, though she is a married woman. This is the equitable solution of the matter."*

Fraternal Bank & Trust Company of Texas (unincorporated) was organized on December 31, 1911. W. M. McDonald was one of the signers of the original Articles of Association of the company. He died on July 4, 1950, and, by bequest, petitioner (the widow of W. M. McDonald) became the owner of 102 shares of stock of the company. She remained a widow until November 6, 1950, when she married petitioner, C. W. Flint, Jr. After becoming a stockholder she served as a member of the Board of Directors from January 9, 1951 through March 21, 1957. She was compensated for her services as a Director, and received dividends paid upon the shares of stock she owned in the joint stock company. The death of Mr. McDonald did not bring about a dissolution of the association. Under all the facts and circumstances, Mrs. Flint should not be permitted to reap the benefits, and refuse to pay the obligations placed upon her by the express terms of Article 6137, supra.

I would affirm the judgment of the Court of Civil Appeals.

Opinion delivered June 25, 1958.

Rehearing overruled December 10, 1958.

MR. JUSTICE SMITH, joined by JUSTICES CALVERT, NORVELL, and GREENHILL, dissenting on motion for rehearing.

The jurisdictions of Vermont, North Carolina, New York, and New Jersey, wherein the cases upon which I rely were decided, had adopted statutes similar to our statutes, Article 6133 to Article 6137, inclusive. The New York statute which was in in effect at the time of the decision in the case of In Re Bank, 22 N.Y. 9, cited in my original dissent, was an Act to enforce the liability of stockholders in certain banking corporations and associations, as prescribed by the Constitution, and to provide for the prompt payment of demands against such corporations and associations. See Laws of New York, Chapter 226, 72 Session, 1849, p. 340. The Act provided in part as follows:

"The term 'stockholder' * * * shall apply not only to such persons as appear by the books of the corporation or association to ba such, but also to every equitable owner of stock, although the same may appear on such books in the name of another person; and also to every person who shall have advanced the instalments or purchase money of any stock in the name of any person under twenty-one years of age, and while such person remains a minor, to the extent of such advance; and also to every guardian or other trustee who shall voluntarily invest any trust funds in such stock; and no trust funds in the hands of such guardian or trustee shall be in any way liable under the provisions of this act, by reason of any such investment, nor shall the person for whose benefit any such investment may be made, be responsible in respect to such stock, until thirty days after the time when such person, respectively, become competent and able to control and dispose of the same; but the guardian or other trustee making such investment as aforesaid, shall continue responsible as a stockholder until such responsibility devolves upon the person beneficially interested therein; and in respect to stock held by a guardian or other trustee, under a transfer of the same by a third person, or under positive directions by a third person for such investment, the person making such transfer, or giving such directions, and his executors and administrators, shall, for the purposes of this act, be deemed a stockholder, and the estate of such person, if he be deceased, shall be responsible for the debts and liabilities chargeable on such stock according to the provision of this act."

Our statutes, supra, deal with unincorporated joint stock com-

panies, but I think the principle is the same. In each instance, a married woman is not prohibited from owning stock or becoming a stockholder. Our statute makes no distinction, but expressly provides (Art. 6137):

"* * *; and, in the event judgment shall be against such unincorporated company or association, it shall be equally binding upon the individual property of the stockholders or members so served, and executions may issue against the property of the individual stockholders or members, as well as against the joint property; but executions shall not issue against the individual property of the stockholders or members until execution against the joint property has been returned without satisfaction."

The Code of North Carolina which was in effect at the time of the decision in the case of Robinson v. Turrentine et al., 59 Fed. 554 (cited in original dissent), authorized the organization of building and loan associations. See The Code of North Carolina, Volume 2, page 44 (1883). In the Robinson case, supra, the court was construing a statute similar to ours. Rev. Stats., Section 5151 made no exceptions in favor of married women. See Keyser v. Hitz, 133 U.S. 138, 10 Sup. Ct. 290. The determining factor against Mrs. Turrentine in the Robinson case was that no legislation had been passed in North Carolina prohibiting a married woman from becoming a stockholder without the consent of her husband. The court stated that the action was one at law brought by Robinson, Receiver of the First National Bank of Willmington, N.C., against Mrs. Turrentine, a married woman, and that if she was the owner of the stock, she would be liable for the assessment. The opinion presents a very conclusive reason why the married woman should be held liable. Among other things, the court reasoned that if she did not become the owner in case of a transfer by the original owner, then the stock would still belong to the person who transferred the shares of stock to her. The court then poses the question: "Would such person be still liable to the assessment, although the transfer had been made 20 years previously?"

The Constitution of North Carolina in Article 10, Section 6, reads as follows:

"The real and personal property of any female in this state acquired before marriage, and all property real and personal to which she may after marriage become in any estate and property of such female, and shall not be liable for any debts, obligations or engagements of her husband, and may be devised and

bequeathed, and with the written assent of her husband conveyed by her as if she were unmarried."

The Act of 1871 (1 Code, Section 1826) reads:

"No woman during her coverture shall be capable of making any contract to affect her real or personal estate except for her necessary personal expenses, or for the support of her family, or such as may be necessary in order to pay her debts existing before her marriage, without the written consent of her husband, uless she be a free trader as hereinafter allowed."

The court, after quoting these provisions from the Constitution and the statute, held against the contention of Mrs. Turrentine that the sale of the bank stock to her was itself a contract which affected both her real and personal estate, and that in the event of the failure of the bank, her separate estate may be taken by reason of the statutory assessment to which the holders of bank stock are liable. In denying this claim, the court stated that such contention failed to note the distinction between a contract and the remote consequences of a contract. The court said:

"* * * The defendant, by her purchase of bank stock, did not become liable to the assessment which is the subject matter of this action. More than 10 years after that purchase, a series of events culminating in the insolvency of the bank, and the appointment of a receiver of its property, occurred. These events rendered it possible for the assessment by the comptroller of the currency to be made. At the time of the contract of the sale of the stock, she in no proper sense by it 'affected her real or personal estate.' It was or may be affected by the operation of subsequent events. Nor does the liability under the assessment come within the words of section 1826. 'No woman,' etc., says the statute, shall be capable of making 'any contract to affect,' etc. The contract by which the stock was purchased was a simple contract of sale. Its only purpose was to transfer the title of the stock from vendor to vendee. It affected simply that stock, which was not at the time of the sale, a part of the personal estate of the defendant, but became so by reason of the sale. The contract to affect a married woman's real or personal property, intended by the statute, is a contract charging such property with a debt or liability specifically ascertained at the time that it is entered into.

"A still more conclusive reason against defendant's conten-

tion arises from the construction which the supreme court of North Carolina has placed upon the statute in Farthing v. Shields, supra. It is well settled, says Shepherd, J., in that case, that 'a feme covert is at law incapable of making any executory contract whatever;' and the learned judge (now chief justice of North Carolina) gives the meaning of the statute in these words: 'No woman, during her coverture, shall be capable of making any engagements in the nature of an executory contract, by which her statutory real or personal estate is to be charged in equity, without the written consent of her husband,' with the exceptions mentioned in the statute. It can hardly be contended that the purchase by Mrs. Turrentine of the stock in question was an engagement in the nature of an executory contract, by which her statutory estate was charged in equity. I am, then, of the opinion that there is nothing in the state constitution or laws by which a feme covert is prohibited either from owning bank stock or from purchasing it without the written consent of her husband."

The majority agrees that the courts are not to engraft exceptions upon a statute when the law-making power has not done so, but holds that if the statute encompasses married women then it must also include minors. The majority projects the reasoning a step further and says, in effect, that to include minors would be to broaden the statute by implication. I do not agree that the phrase (of Article 6133) "any and all of the stockholders or members" includes minors. The legislature was not thinking of minors when it enacted the series of statutes, supra, authorizing the organization of joint stock companies. I do not believe that the privilege of owning stock in a joint stock company extends to minors in the broad sense that a married woman may own stock. A minor is capable of being a donee of stock, and when the gift of such stock is to the advantage of the minor, a formal acceptance is not necessary since the law implies an acceptance; but if the gift is not to his advantage, or becomes a burden to the minor before he becomes sui juris, the law implies a repudiation. See Austin v. Burden, Texas Civ. App., 297 S.W. 648 (no writ history). In that case the married woman was held liable to the double assessment of state bank shareholders, even though she had transferred her stock to a minor granddaughter long before the bank failure. In the case of State ex rel. Walker v. Rogan, 93 Texas 248, 54 S.W. 1018, this Court held that the statutory privilege of any person desiring to purchase public school land did not extend to minors. This doctrine does not extend to married women, and the Court, in the case of Lee v. Green, Texas Civ. App., 58 S.W. 847 (1900), writ re-

fused, expressly refused to extend the doctrine announced in State ex rel. Walker v. Rogan, supra. See the case of Anderson v. Neighbors, 94 Texas 236, 59 S.W. 543, wherein it was inferentially held that the statute involved in the Rogan case did comprehend married women; also see Anderson et al. v. Neighbors, Texas Civ. App., 61 S.W. 145, writ refused, with written opinion in Neighbors v. Anderson, 94 Texas 487, 62 S.W. 417. These cases are important in that they completely refute the theory advanced in the majority opinion that if the statute encompasses married women it necessarily follows that it also includes minors.

A minor, upon reaching his majority, may recover from an insolvent association all moneys theretofore paid by him into the association free from all claims for premiums, fines, and losses. This was held in the case of Prudential Building & Loan Association v. Shaw, 119 Texas 228, 26 S.W. 2d 168. But this is not true in the case of a married woman. In the case of Pitts v. Elser, 87 Texas 347, 28 S.W. 518, this Court held that "* * * A married woman who voluntarily pays her money or other personal property upon a contract made by her, or in any way that would bind a man, cannot recover it back simply upon the ground that she is a married woman. * * *" The Court further held that "* * * In this state the right of a married woman to acquire and hold property, real and personal, either by gift, devise, descent, or purchase, is as absolute as that of her husband. * * *" One distinction between a married woman and a minor must be remembered, i.e., that an infant or minor is incapable of giving his assent to become a shareholder. Hence, liability cannot attach. On the other hand, the disability of coverture of a married woman does not preclude her purchase or assent to the gift of shares in an unincorporated joint stock company.

In this connection, it is interesting to note that in 1903 the legislature of North Carolina amended the state statutes thereby authorizing and empowering married women and minors of the age of twelve years and upwards to become stockholders in associations. See Footnote 1, Public laws of North Carolina, Session 1903, Chapter 728, an Act to amend Chapter 7, Volume 11, of the Code of North Carolina. It is competent for the legislature to depart from the rules and analogies of the common law and to make married women and their estates liable, as other shareholders in joint stock companies are liable. I think that was done when the legislature of Texas enacted the statutes under which this suit was brought. I know of no provision in our

Constitution which would preclude such action by the legislature. Certainly there must have been no such prohibition in the North Carolina Constitution as to either married women or children. It is my thought that the Legislature of North Carolina included married women in the amendment of 1903, not because it was necessary to create liability, but for the plausible reason that the legislature was in agreement with the earlier decisions of the courts of North Carolina holding married women and their separate estates liable under similar circumstances to the instant case.

I would grant petitioner's motion for rehearing and affirm the judgment of the Court of Civil Appeals.

Opinion delivered December 10, 1958.